KELLY, C.J.
In these consolidated cases, we must determine the proper interpretation of the venue statute[1] in the Civil Rights Act (CRA).[2] Specifically, we are asked to decide whether venue was proper in Wayne County under MCL 37.2801(2).
*154 Plaintiffs filed their suits in Wayne County, alleging that defendant terminated their employment in violation of the CRA. The Court of Appeals, relying on its decision in Barnes v Int’l Business Machines Corp,[3] concluded that venue was proper only in Oakland County, where defendant made the decisions to terminate plaintiffs’ employment. Consequently, the Court of Appeals reversed the trial courts’ orders denying defendant’s motions to change venue to Oakland County.[4]
We disagree with the Barnes decision and overrule it.[5] In the cases before us, part of the alleged discrimination occurred in Wayne County, where plaintiffs worked and where the allegedly discriminatory actions were implemented. Therefore, we reverse the judgment of the Court of Appeals and remand these cases to the Wayne Circuit Court for further proceedings on plaintiffs’ claims.
FACTS AND PROCEDURAL HISTORY
Plaintiffs are African-Americans formerly employed by defendant. They worked for defendant at banking centers in Wayne County. On or around May 17, 2007, defendant terminated their employment for alleged misconduct. Plaintiff Sharon Champion learned of her dismissal through a telephone call from defendant’s office in Oakland County to her home in Wayne County. The parties dispute where plaintiff Brandon Brightwell *155 received notice of his dismissal.[6]
Plaintiffs filed separate lawsuits in Wayne County, each alleging that defendant had terminated their employment for reasons of racial discrimination in violation of the CRA.[7] Defendant moved in both lawsuits to change venue to Oakland County. It supported the motions with an affidavit from Michael Andrzejewski, an employee relations consultant who worked in defendant’s Southfield regional office in Oakland County.
Andrzejewksi averred in his affidavit that he was personally involved in the final decisions to terminate plaintiffs’ employment and that those decisions were made in the Southfield regional office. Defendant claimed that because it made the decisions in Oakland County, venue was proper only there. Both trial courts declined to change venue. Defendant sought interlocutory appeals in both cases.
The Court of Appeals granted both applications for leave to appeal, consolidated the appeals, and reversed the trial courts’ rulings in a divided decision. Relying on Barnes, the lead opinion concluded that “the appropriate venue for a CRA cause of action. .. depends on where the defendant’s violation occurred, not where the plaintiff was injured.”[8] It noted that “[t]his Court has held that the alleged violation of the CRA is the action which gives rise to liability under the act, i.e., the corporate decision affecting the plaintiffs employment.”[9]
*156 The Court of Appeals concurrence agreed that “venue is appropriate where the CRA was violated through the use of improper characteristics in making an employment decision.”[10] It criticized the dissenting opinion’s discussion of the statutory tort venue provision, MCL 600.1629, as interpreted in our decision in Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC.[11]
The Court of Appeals dissent argued that the employment decisions constituted only a “potential violation” of the CRA and that it was the actual discharges that constituted the adverse employment actions.[12] The dissent would have held that venue was proper in Wayne County.[13] Plaintiffs sought review in this Court, and we granted their applications for leave to appeal.[14]
ANALYSIS
An appellate court uses the clearly erroneous standard to review a trial court’s ruling on a motion to change venue.[15] Statutory interpretation involves questions of law that are reviewed de novo.[16]
The relevant statutory provision, MCL 37.2801, provides in part:
(1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.
(2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the *157 person against whom the civil complaint is filed resides or has his principal place of business.
As always, our analysis begins with the language of the statute.[17] The primary goal of statutory interpretation is to give effect to the intent of the Legislature as expressed in the statute.[18]
These cases involve only the first clause of subsection (2), which makes venue proper “in the circuit court for the county where the alleged violation occurred.”[19] In Barnes, the Court of Appeals held, without citation or analysis, that the “violations alleged are adverse employment decisions” and that “the place of corporate decision making is an appropriate venue.”[20] Judge WHITE concurred separately, opining that “[discrimination also ‘occurs’ in the county where the decision is implemented and the discrimination is inflicted.”[21] She rejected the majority’s implication that “venue of a civil rights action is proper only in the county where the *158 discriminatory decision is made.”[22]
The question of where venue properly lies for a lawsuit brought under the CRA turns on the meaning of the phrase “where the alleged violation occurred” found in MCL 37.2801(2). “Violation” is defined in part as “1. the act of violating or the state of being violated. 2. a breach or infringement, as of a law or promise.”[23] Plaintiffs alleged that defendant violated MCL 37.2202(1), which provides in part:
An employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
A “violation” of MCL 37.2202, therefore, is equally dependent on an adverse employment action (in these cases the act of “discharging]”) and an improper motive for taking that action (a decision to discriminate “because of” a protected status). We believe it logically follows that a violation of the CRA “occur[s]” when the discriminatory decision is made and adverse employment actions are implemented.
Thus, we agree with Judge White’s concurrence in Barnes, which is also consistent with other courts’ interpretations of similar venue provisions. The majority in Barnes erred by restricting what constitutes a violation of the CRA to “adverse employment decisions.”[24] Relying heavily on Barnes, the Court of Appeals lead and concurring opinions here reached the same erroneous conclusion.
We overrule Barnes because it restricted the analysis of a violation of the CRA to the adverse employment *159 decision. Barnes is inconsistent with MCL 37.2202(l)(a) and the meaning of “violation” and “occurred” in MCL 37.2801.
However, this determination does not fully resolve the issue before us. A remaining question is: What specific actions constitute the unlawful discharge that establishes the CRA violation? Venue in these cases was clearly proper in Oakland County because it is undisputed that defendant resides in Oakland County. However, plaintiffs filed suit in Wayne County. The Court of Appeals determined that the trial courts erred by denying defendant’s motions to change venue to Oakland County because venue did not properly lie in Wayne County. Therefore, we must determine whether a CRA violation occurred in Wayne County that would provide a basis for venue in that location as well.
Defendant asserts that, even if Barnes is overruled, venue is proper only in Oakland County because that is where defendant completed several actions necessary to effectuate each plaintiffs discharge. For example, it removed plaintiffs from its payroll system at its Oakland County office. Plaintiffs counter that the only action that was relevant was the communication of the discharge decisions to them.
We reject both parties’ arguments. It would be arbitrary to consider any of the suggested actions entirely dispositive of where the CRA violation occurred. Discrimination claims often involve numerous actions concerning employers’ practices. Moreover, often it is unclear where the actions occurred that the parties claim are dispositive. Indeed, these cases provide a good illustration of the problem. If the location where the employment decision was communicated to a plaintiff is solely dispositive, a court must still determine where *160 that decision was “communicated.”[25]
Finally, under this approach, defendants could unilaterally control venue by completing administrative tasks related to terminating a plaintiffs employment in their choice of locales. Or they could order an employee to report to a location in the venue they desire and fire the employee there. We believe these are not results that the Legislature intended in enacting the CRA.[26]
We conclude that the adverse employment actions in these cases occurred where plaintiffs’ place of employment was located.[27] That is where most relevant actions involving the employer-employee relationship occur. Moreover, it is the severing of the employment relationship that is the truly adverse employment action. This action happens when the employee is no longer entitled to enter his or her place of work and perform the responsibilities of employment.
As Judge WHITE observed, it is also at this point that the allegedly unlawful discharge is fully “implemented *161 and the discrimination is inflicted.”[28] Applying that logic to these cases, we note that plaintiffs worked in Wayne County. Because defendant’s allegedly unlawful actions precluded plaintiffs from continuing to do so, the CRA violations occurred in Wayne County.[29]
The concurrence/dissent erroneously limits the occurrence of a violation solely to the place where a discriminatory decision is communicated to an employee. In doing so, it attaches too much significance to where the disclosure of the allegedly discriminatory discharge occurs. Indeed, the essence of the concurrence/dissent’s conclusion is found in its statement that “it can only be the actual communication, which itself implements a discriminatory decision, that amounts to the actual ‘discharge’ ... ,”[30] Our reaction to this assertion is to ask: Why is this inherently so?
The concurrence/dissent offers no persuasive analysis to support its conclusion that the CRA violation must occur where the discharge is communicated. The right being violated under the CRA is not the right to be free from communication of adverse employment actions. Rather, it is the right to be free from actions that actually separate the employee from gainful employment for discriminatory reasons.[31] The justices joining the concurrence/dissent convey an incorrect interpretation of this opinion when they write “that scarcely one in a thousand people would believe that a person is not *162 ‘discharged’ from employment at the moment an employer says to the employee: ‘You’re fired.’ ”[32] In a world where snappy soundbites often distort the facts, this statement fits well and has face appeal. In truth, we justices do not disagree that “You’re fired” means “You are discharged from your employment.” Rather, this case addresses a quite different question, which is: If you are fired, in what location are you entitled to bring suit?
It is true that the actus reus and the mens rea of a CRA violation converge when a defendant communicates a discriminatory decision to an employee. But while that convergence causes the CRA violation, it does not settle the issue of what constitutes discharging the employee: the communication of the discriminatory decision or removing the employee’s right to work at his or her place of employment.[33]
*163 Decisions from other jurisdictions involving similar statutes have generally taken a more nuanced approach in evaluating where an employment discrimination violation occurs.[34] Other jurisdictions have consistently *164 analyzed similar statutory language as including “ ‘the place where the decisions and actions concerning the employment practices occurred.’ ”[35] We believe that it is the severance of the employment relationship that constitutes the actual discharge, not the mere communication of an adverse employment decision.[36]
The concurrence/dissent’s definition of “discharge” provides greater support for our interpretation.[37] To “relieve of obligation,” “deprive of. . . employment,” or “dismiss from service” involves many decisions and *165 actions. One is the communication of the dismissal to the employee, which the concurrence/dissent concludes is the basis for a CRA violation. However, it is not the communication of the discharge that violates the CRA, it is the actual discharge of the employee from his or her employment. This act occurs where the employee works because the employer has discharged the employee by removing his or her ability to work in that location.
The concurrence/dissent’s determination of when a CRA violation occurs leads it to assert that the doctrine of expressio unius est exclusio alterius undermines our conclusion.[38] However, this argument is premised on the concurrence/dissent’s erroneous construction of the term “discharge” and of the language “where the alleged violation occurred” in MCL 37.2801(2). Since the Legislature intended the interpretation we ascribe to the language, there was no reason to expressly include an employee’s place of employment as an alternative basis for venue. Hence, if “where the *166 alleged violation occurred” encompasses acts precluding an employee from continuing to work at his or her place of employment, why would additional language be necessary?
Moreover, the last portion of the provision furnishing a basis for venue in MCL 37.2801(2) is explicitly tied to locations over which the employer has exclusive control; specifically, it provides for proper venue in “the county where the person against whom the civil complaint is filed resides or has his principal place of business.” Presumably, if the Legislature had also intended that “where the alleged violation occurred” be a place over which a defendant had full control, it would have said so.
The Legislature certainly could have provided venue in “the county where the person against whom the civil complaint is filed resides, has its principal place of business, or communicates the alleged violation to the employee.” It did not do so. This omission suggests that the phrase “where the alleged violation occurred” was not similarly meant to be limited to locations subject to a defendant’s exclusive control.[39] In sum, there is no textual basis in the CRA for reading the language of MCL 37.2801(2) as the concurrence/dissent reads it.
*167 Finally, our analysis avoids the arbitrariness of the approaches suggested by the parties and accepted by the concurrence/dissent. Employers and employees generally both have some influence in determining where an employment relationship is formulated. “Venue rules traditionally have served to ensure that proceedings are held in the most convenient forum,”[40] and it defies common sense to conclude that the county in which the employee actually worked for the employer would be an inconvenient forum for either party.
We again reject the concurrence/dissent’s assertion that our decision is policy driven and that our analysis is merely justification for a predetermined interpretation. In fact, our decision is reasonably derived from the language of the statute. This decision invokes at least the following exercises in statutory interpretation: (1) an attempt to reasonably comprehend the meaning of “violation,” “occurred,” and “discharge” in the CRA, (2) an attempt to reasonably comprehend the meaning of these terms in the context of MCL 37.2801(2) as a whole, (3) an attempt to assess where the actus reus and the mens rea of the statute converge, (4) an attempt to compare the language of MCL 37.2801(2) with that of its predecessor statute, (5) an assessment of the relevance of traditional maxims of statutory construction, in this case expressio unius est exclusio alterius, (6) an attempt to assess alternative meanings of the relevant statutory terms, including those adopted by the concurrence/dissent, in light of the overall purposes of *168 the statute, and (7) an attempt to compare and contrast the caselaw of other states construing similar language. That we additionally point out that our interpretation results in a considerably more convenient forum than that of the concurrence/dissent does not detract from the focus of our interpretative approach.
APPLICATION
Plaintiffs both worked for defendant in Wayne County. Because adverse employment actions — the severance of plaintiffs’ employment relationships — took place in Wayne County, the CRA violations occurred in Wayne County. Thus, venue properly lay in Wayne County under MCL 37.2801(2). Therefore, the Court of Appeals incorrectly held that the trial courts clearly erred by denying defendant’s motions to change venue to Oakland County.
CONCLUSION
We conclude that, under MCL 37.2801(2), a violation of the CRA occurs when the alleged discriminatory decision is made and the allegedly adverse employment actions are implemented. We overrule the Court of Appeals’ decision in Barnes v Int’l Business Machines Corp to the extent that it held otherwise.
We further conclude that the CRA violation in a case alleging discharge from employment is the severance of the employment relationship. The decisions and actions constituting that violation are implemented, and therefore occur, when the employee is no longer entitled to enter the workplace and perform the responsibilities of employment.
In these cases, each plaintiffs employment relationship with defendant was based and severed in Wayne County. *169 Thus, defendant’s alleged violations of the CRA. occurred in Wayne County. Accordingly, we reverse the judgment of the Court of Appeals and remand these cases to the Wayne Circuit Court for further proceedings there on plaintiffs’ claims.
CAVANAGH, MARKMAN, and HATHAWAY, JJ., concurred with Kelly, C.J.

 MCL 37.2801.

 MCL 37.2101 et seq.

 Barnes v Int’l Business Machines Corp, 212 Mich App 223; 537 NW2d 265 (1995).

 Brightwell v Fifth Third Bank of Michigan, unpublished opinion per curiam of the Court of Appeals, issued April 9, 2009 (Docket Nos. 280820 and 281005).

 In Barnes, the Court of Appeals did not explicitly limit venue to the place where the employment decisions were made. However, later panels of the Court have interpreted it that way. See, e.g., Green v R J Reynolds Tobacco Co, unpublished opinion per curiam of the Court of Appeals, issued May 26, 1998 (Docket No. 196355).

 Brightwell claims that defendant communicated his termination to him at his place of employment in Wayne County. Defendant asserts that Brightwell received notification of his termination at his home in Oakland County. This factual dispute is irrelevant to our conclusion in this case.

 We do not discuss the merits of plaintiffs’ CRA claims here because they are not before us.

 Brightwell, unpub op at 3 (opinion by Bandstra, J.).

 Id. at 2.

 Id. at 4 (Talbot, P.J., concurring).

 Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC, 481 Mich 618; 752 NW2d 37 (2008).

 Brightwell, unpub op at 3-4 (Gleicher, J., dissenting).

 Id. at 5.

 Brightwell v Fifth Third Bank of Michigan, 485 Mich 902 (2009).

 Shock Bros, Inc v Morbark Industries, Inc, 411 Mich 696, 698-699; 311 NW2d 722 (1981).

 People v Swafford, 483 Mich 1, 7; 762 NW2d 902 (2009).

 People v Davis, 468 Mich 77, 79; 658 NW2d 800 (2003).

 Brown v Detroit Mayor, 478 Mich 589, 593; 734 NW2d 514 (2007).

 Defendant claims, and plaintiffs do not dispute, that it “resides” in Oakland County and that its principal place of business is in Kent County.

 Barnes, 212 Mich App at 226-227 & n 3. We note that Barnes relied heavily on the policy rationale articulated in Gross v Gen Motors Corp, 448 Mich 147, 164; 528 NW2d 707 (1995), that one of the goals of venue provisions is to discourage forum-shopping. Barnes, 212 Mich App at 226. As a general matter, this statement is correct.
However, Gross interpreted the tort venue provision, MCL 600.1629, which was added as part of the tort reforms enacted in 1986. One of the Legislature’s explicit goals was to reduce forum-shopping by plaintiffs. Gross, 448 Mich at 157-158. By contrast, MCL 37.2801 has not been amended since it was enacted as part of the CRA in 1976. Thus, we find wanting Barnes’s determination that Gross’s reasoning was applicable to discrimination cases. On the contrary, much more persuasive reasons exist to interpret the CRA venue provision as we do today.

 Barnes, 212 Mich App at 227 (White, P.J., concurring) (citation omitted).

 Id.

 Random House Webster’s College Dictionary (2001).

 Barnes, 212 Mich App at 226.

 For example, was the decision in Champion’s case communicated in Oakland County, where the phone call to her was placed, or in Wayne County, where she received it? In Brightwell’s case, this burden is potentially even greater, as the facts regarding where Brightwell was informed of his termination are in dispute.

 We are not alone in that belief. The Massachusetts Appeals Court has written: “[T]he place where the employee is notified of his discharge does not necessarily establish the place where the alleged unlawful discharge occurred. To hold otherwise would allow employers to circumvent [Mass Gen L ch 151B] by simply notifying employees of their discharge when they are not in the Commonwealth.” Cormier v Pezrow New England, Inc, 51 Mass App 69, 73; 743 NE2d 390 (2001), quoted with approval in Cormier v Pezrow New England, Inc, 437 Mass 302, 305-306; 771 NE2d 158 (2002).

 Judge White’s concurrence in Barnes implied a similar approach. She rejected the plaintiffs claim that venue was proper in Wayne County because Wayne County “was not the locus of his employment. ...” Barnes, 212 Mich App at 227 (White, P.J., concurring).

 Id. “Implement” is defined in part as “to fulfill; carry out [or] to put into effect according to a definite plan or procedure.” Random, House Webster’s College Dictionary (2001). “Inflict” is defined in part as “1. to impose as something that must be borne or suffered: to inflict punishment. 2. to impose (anything unwelcome).” Id.

 Interpreting an almost identically worded statute, the Massachusetts Supreme Judicial Court similarly concluded that “an unlawful employment practice may occur where ‘the core of the employment relationship’ lies.” Cormier, 437 Mass at 307.

 Post at 174 n 10.

 MCL 37.2102(1) makes this clear. It provides that
*162 [t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.
The CRA prohibits discrimination in a variety of employment decisions, so this right implicitly includes the right to retain employment free from discrimination based on a protected status.
Therefore, an interpretation of MCL 37.2801(2) resulting in an outcome such as the one posited in the concurrence/dissent’s hypothetical example, post at 177 n 17, does indeed find support in the statutory language. The concurrence/dissent’s argument on this point is essentially that our approach would lead to inappropriate venues. It is in effect a policy argument asserting that the concurrence/dissent’s approach is a preferable one; it is not an argument that the statutory language provides greater support for its approach.

 Post at 172.

 The concurrence/dissent correctly notes that the removal of an employee’s right to work will usually occur simultaneously with the “the point of communication of a discriminatory decision....” Post at 172 n 7. *163 However, our fundamental disagreement is about where (not when) the discharge takes place. We hold that it occurs at the place of employment because the removal of the right to work at the workplace constitutes a discharge. By contrast, the concurrence/dissent would hold that the discharge occurs wherever the communication of that discharge is uttered and heard.
Thus, because the disagreement between the majority and the concurrence/dissent does not relate to the timing of when a discharge occurs, the concurrence/dissent misses the mark with several of its criticisms of our analysis. Post at 169,172-173. This misunderstanding of our approach is particularly evident in the last sentence of the concurrence/dissent. We do not “interpreto this state’s civil rights laws in a way that prevents a putative plaintiffs claims from becoming actionable the moment a violation of the CRA occurs....” Post at 179. The pertinent question and point of disagreement between this opinion and the concurrence/dissent is where, not when, the violation is actionable.

 Pope-Payton v Realty Mgt Servs Inc, 149 Md App 393, 395; 815 A2d 919 (2003) (interpreting a statute providing for venue in the county “in which the alleged discrimination took place”); Cormier, 437 Mass at 305 (interpreting a statute providing for venue in the county “in which the alleged unlawful practice occurred”); Passantino v Johnson & Johnson Consumer Prods, Inc, 212 F3d 493, 504 (CA 9, 2000) (interpreting a Title VII provision making venue proper “in any judicial district in the State in which the unlawful employment practice is alleged to have been committed”); Cox v Nat’l Football League, 1997 WL 619839; 1997 US Dist LEXIS 15307 (ND Ill, Sept 29, 1997) (same); McDonald v American Federation of Musicians, 308 F Supp 664 (ND Ill, 1970) (same).
Undoubtedly, as the concurrence/dissent observes, the venue provision in Title VII, 42 USC 2000e-5(f)(3), provides for venue in more locations than does MCL 37.2801(2). But that fact fails to undermine our interpretation of the statutory language. It is guesswork to conclude that “the Michigan Legislature declined to adopt comparable language when it crafted Michigan’s CRA.” Post at 177. The precursor of MCL 37.2801, enacted before Title VII, contained similar language allowing venue in “the county wherein the alleged unlawful discriminatory practice is alleged to have occurred.. ..” Former MCL 37.4, repealed by 1976 PA 453. One could just as easily surmise that the Legislature *164 recycled that language when it crafted MCL 37.2801. Again, absent clear indications of the Legislature’s intent, this is an exercise in futility.
Whether our construction of MCL 37.2801(2) would render some provisions of Title VII “redundant” or “surplusage,” post at 177 n 18, is irrelevant. The language of the CBA venue provision, as illustrated by the concurrence/dissent, is quite different from that used in Title VII.

 Cox, 1997 WL 619839, at *2; 1997 US Dist LEXIS 15307, at *6, quoting Hayes v RCA Serv Co, 546 F Supp 661, 663 (D DC, 1982).

 The concurrence/dissent cites one case from the United States District Court for the Southern District of New York that supports its position, but ignores contrary authority from the same district. Lucas v Pathfinder’s Personnel, Inc, 2002 WL 986641, *1; 2002 US Dist LEXIS 8529, *3 (SD NY, 2002) (“The allegation that the decision to terminate Plaintiff was made in New York City... is insufficient to establish a violation of the [New York City human rights law] where, as here, the impact of that decision occurred outside of New York City.”); Wahlstrom v Metro-North Commuter R Co, 89 F Supp 2d 506, 527 (SD NY, 2000) (stating that courts in the Southern District of New York “have held that the [New York City human rights law] only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer’s New York City office”); Duffy v Drake Beam Morin, 1998 WL 252063, *12; 1998 US Dist LEXIS 7215, *35 (SD NY, 1998) (“[E]ven if, as [the plaintiffs] claim, the decision to fire them was made by [Drake Beam Morin] at its headquarters in New York City, that fact, standing alone, is insufficient to establish a violation of the City Human Rights Law when the employees affected by that decision did not work in New York City.”).

 See post at 170 n 2 (“ ‘Discharge’ is not defined in the statute, but is commonly defined, in relevant form, as ‘to relieve of obligation, responsibility’; ‘to relieve or deprive of office, employment, etc.; dismiss from service.’ ”).

 We disagree that the canon of expressio unius est exclusio alterius applies for two reasons. First, MCL 37.2801(2) lists only locations related to the person against whom the civil complaint is filed and makes no mention of the person filing the complaint. Thus, only locations related to the defendant in a CRA. action could properly be considered excluded by implication under this canon. The lack of any reference in MCL 37.2801(2) to the plaintiff, the person filing the CRA complaint, undermines the concurrence/dissent’s application of the canon to this statute.
Second, as the United States Supreme Court has observed, proper application of the canon requires the “essential extrastatutory ingredient of an expression-exclusion demonstration, the series of terms from which an omission bespeaks a negative implication. The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand.” Chevron USA Inc v Echazabal, 536 US 73, 80-81; 122 S Ct 2045; 153 L Ed 2d 82 (2002). Here, the provisions establishing venue where a defendant “resides” or has its “principal place of business” refer to fixed and readily ascertainable locations. By contrast, where “the alleged [CRA] violation occurred” is a more amorphous concept that does not go hand in hand with the others.

 It is irrelevant whether the concurrence/dissent “subscribe[s]” to the view that venue is limited to places over which defendant has exclusive control. Post at 175 n 12. The relevant point is that the concurrence/dissent’s approach, equating communication of the discharge decision with the CRA violation, would place all the venue alternatives in MCL 37.2801(2) under defendant’s exclusive control.
Consider the exsimple of an employee who works for her employer exclusively in Wayne County. Under the concurrence/dissent’s approach, venue for a discriminatory discharge case would not be proper in Wayne County if the employer invited her to lunch in Windsor, Canada to tell her she was discharged. Similarly, the employee might attend a work retreat in the Upper Peninsula at her employer’s request and be informed there that she was discharged. The concurrence/dissent would find venue proper in the Upper Peninsula rather than in Wayne County, notwithstanding that the Upper Peninsula may have no other connection to either the employer or the employee.
*167 Moreover, the “parallel venue provisions” found in MCL 600.1629 that the concurrence/dissent cites are inapposite to MCL 37.2801(2). MCL 600.1629(l)(b) merely refers to a plaintiffs residence or place of business as an alternative venue to be invoked if venue cannot be established under MCL 600.1629(l)(a). MCL 37.2801 contains no such alternative venue provision.

 Gross, 448 Mich at 155.