STATE OF MICHIGAN
COURT OF APPEALS

*In re* Conservatorship of SHIRLEY BITTNER.

---

STACEY BITTNER, Personal Representative of
the ESTATE OF SHIRLEY BITTNER,

        Appellant,

v

SUZANNE BITTNER-KORBUS, KEVIN
ADAMS, and THE LAW OFFICES OF KEVIN
ADAMS PLLC,

        Appellees,

and

STACEY BITTNER, Individually,

        Respondent.

UNPUBLISHED
June 28, 2018

No.  338226
Macomb Probate Court
LC No.  2016-221230-CA

---

Before:  MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Appellant Stacey Bittner,[1] as personal representative of the Estate of Shirley Bittner (the Estate), appeals by right the trial court's order directing Shirley to pay outstanding fees and costs owed to a special fiduciary, and the trial court's earlier decision denying a motion to change venue.  We affirm.

This is the fifth time this matter, in one form or another, has been before this Court.  Most of the details were set forth in greater detail than we need recount here in *In re Bittner*

---

[1] For ease of reference, Shirley Bittner and her daughters, Stacey, Suzanne, and Shirleen, will be referred to as necessary by their first names.

-1-

*Conservatorship*, 312 Mich App 227, 230-235; 879 NW2d 269 (2015). Broadly, the underlying dispute, whether carried on in probate or circuit court, concerns the aftermath of health problems Shirley developed after her husband of more than fifty years passed away in 2011. Initially, Shirley entrusted her finances to Suzanne, granting her a durable power of attorney and trusteeship. Shirley later petitioned the probate court for an accounting, asserting that Suzanne had misappropriated a considerable amount of Shirley's funds. Suzanne petitioned for appointment of a conservator for Shirley, alleging that Shirley could not manage her affairs, and despite Shirley's denial, Stacey was appointed that conservatorship. Stacey, in her role as conservator, appealed to this Court, which reversed the order and remanded for further proceedings, holding that clear and convincing evidence failed to show that Shirley could not manage her affairs. *Id*. at 243. Shirley died on June 26, 2017, during the pendency of both the above and the instant appeals. Stacey, in her capacity as the personal representative of Shirley's estate, has been permitted to substitute as appellant.

A few days prior to this Court's decision above, Shirley, through Stacey, initiated a conversion claim against Suzanne in circuit court, which, after this Court's decision reversing the conservatorship, the circuit court dismissed without prejudice for lack of jurisdiction. On appeal, this Court found that dismissal improperly premature and reversed it. *In re Conservatorship of Bittner*, unpublished opinion per curiam of the Court of Appeals, decided October 26, 2017 (Docket No. 333137). Meanwhile, Stacey had filed an accounting in the probate proceeding, which Suzanne contended failed to account for roughly $93,000.00 of Shirley's funds. The probate court found Stacey's accounting unsatisfactory and, *inter alia*, ordered Shirley to undergo a "supplemental independent medical exam." Shirley attempted to appeal that order, which this Court dismissed on jurisdictional grounds. *In re Bittner Conservatorship*, unpublished order of the Court of Appeals, entered April 21, 2016 (Docket No. 331174).

Thereafter, the probate court dismissed Suzanne's petition to appoint a conservator without prejudice; consequently, the medical exam was, apparently, never conducted. Suzanne promptly filed a second such petition, in response to which Shirley, in relevant part, contended that she had moved from Macomb County to Genesee County on the day that the initial petition was dismissed, and that venue was therefore no longer proper in Macomb County. Suzanne contended that this change was a sham. The probate court found that the evidence did not establish that Shirley had moved or that venue was improper in Macomb County even if she had. At the same hearing, the probate court was about to order Shirley to submit to the medical evaluation, when Shirley's attorney interjected and offered the alternative of having Shirley's tax attorney, Kevin Adams, prepare a detailed accounting, asserting that the real issue was the missing money. Shirley's counsel suggested that the accounting could mitigate the need for further proceedings. Over Suzanne's objection, the trial court agreed to adjourn the matter pending Adams's accounting.

Adams subsequently filed a petition for instruction with the probate court regarding the fees and costs incurred during the preparation of his accounting. Adams requested the trial court approve fees and costs in the amount of $27,624.38, and determine which party or parties were responsible for the fees. Stacey, Shirley, and Suzanne each filed individual responses to the petition. Stacey contended that she should not be responsible for the fees because she was only an interested party, Shirley contended that she should not be responsible for the fees because they were solely necessitated by litigation caused by Suzanne, and Suzanne contended that

Adams had been bought into the case by Shirley as her tax attorney and expert witness, and thus no one other than Shirley could be held responsible for his fees. The trial court recognized that Adams had acted as a special fiduciary and not an expert witness, but nevertheless found that Shirley should be responsible for Adams's bill.

Shirley then filed the claim of appeal currently before the Court, challenging the probate court's denial of her petition to change venue and its decision to hold her solely responsible for Adams's fees. As noted, Shirley herself passed away after the claim of appeal was filed, and Stacey is proceeding in her place as the personal representative of her estate.

The Estate's first argument is that the trial court clearly erred in denying Shirley's petition to change venue. We disagree.

There is no dispute that this issue is reviewed for clear error, meaning even if there is some evidence to support the trial court's conclusion, we are definitely and firmly convinced it was a mistake. *Brightwell v Fifth Third Bank of Mich*, 487 Mich 151, 156; 790 NW2d 591 (2010); *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). Under this standard, there may be more than one permissible outcome, much like the abuse of discretion standard. *Hill v City of Warren*, 276 Mich App 299, 308-309; 740 NW2d 706 (2007). We give great deference to the trial court's findings of fact unless they appear to be the product of an incorrect conclusion of law. *Yachcik v Yachcik*, 319 Mich App 24, 31-32; 900 NW2d 113 (2017).

"Statutory interpretation involves questions of law that are reviewed de novo." *Brightwell*, 487 Mich at 156. "Venue is controlled by statute in Michigan." *Dimmitt & Owens Fin, Inc, v Deloitte & Touche LLC*, 481 Mich 618, 624; 752 NW2d 37 (2008) (citations omitted). "Venue is determined at the time the suit is filed and is not normally defeated by subsequent events." *Shiroka v Farm Bureau Gen Ins Co of Mich*, 276 Mich App 98, 104; 740 NW2d 316 (2007). Relevant to this matter, venue would be proper "[i]n the court at the place in this state where the individual to be protected resides whether or not a guardian has been appointed in another place." MCL 700.5403(a). Consequently, the issue is whether the trial court properly found that Shirley "resided" in Macomb County at the time the petition was filed.

A residence is "any place of abode or dwelling place, however temporary." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 494; 835 NW2d 363 (2013) (quotation marks and citation omitted). Although there need not be an intent to remain permanently or indefinitely, the person must have some kind of intent to remain. *Kar v Nanda*, 291 Mich App 284, 288; 805 NW2d 609 (2011). Significantly, unlike a "domicile," which is essentially a residence *and* an intent to remain permanently, a person is not limited to having only one "residence." *Grange*, 494 Mich at 494-495. Consequently, by definition venue may well be proper in multiple counties; put another way, even if Shirley established that venue was proper in Genesee County, that does not *necessarily* establish that venue was improper in Macomb County.

Indeed, we think it would be hard to dispute that there was some evidence in the record supporting the contention that Shirley had moved to Genesee County between the dismissal of the first petition and the filing of the second. During that time, Shirley changed the address on her driver's license and registered to vote in Genesee County. The parties all agreed, however, that Shirley also continued to own her home in Macomb County. Furthermore, we do not

believe it would have been unwarranted for the trial court to hold a certain degree of skepticism, especially in light of its vastly superior ability to evaluate the credibility of those appearing before it and its extensive history with this matter. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). We do not believe it was clear error for the trial court to conclude that the evidence showed Shirley retained some intent to continue to reside in Macomb County at the time the petition was filed.

Consequently, the trial court was not required by MCR 2.223 to transfer venue, but rather had the discretion under MCR 5.128 to do so for the convenience of the parties, witnesses, and attorneys. The trial court found that transfer of venue to Genesee County would be inconvenient, and, considering the extensive experience the trial judge already had with the matter and the presence of the witnesses and "relevant banks" in Macomb County, we find no abuse of that discretion. The trial court's decision not to transfer venue is affirmed.

The Estate next contends that the trial court abused its discretion when it ordered that Shirley was solely responsible for Adams's fees and costs. Again, we disagree.

As an initial matter, the applicable standard of review is not readily discernable from any published case, although both parties, for differing reasons, agree that it is the abuse of discretion standard, under which the lower court may have a range of "principled outcomes" available from which to choose freely. See *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We disagree with Suzanne's contention that Adams was not a special fiduciary: Shirley's counsel explicitly "offer[ed] an accounting by a special fiduciary (inaudible) of doing an accounting of these funds and that a special fiduciary for doing so be Mr. Kevin Adams." Even if the trial court did not use the words "special fiduciary" at the time, it is apparent from the record that it accepted the offer, and it *did* refer to Adams as a special fiduciary in a subsequent order. "[A] court speaks through its written orders." *In re Leete Estate*, 290 Mich App 647, 658; 803 NW2d 889 (2010). Suzanne did not object particularly to Adams's proposed role so much as his necessity at all. Propriety aside, we find the record establishes that Adams was appointed as a special fiduciary.

That being the situation, MCL 700.1309 and MCR 5.204 each provide the probate court discretion to appoint a special fiduciary for any number of purposes, but neither provide guidance regarding compensation. Nonetheless, we think it a necessary logical inference that any such fiduciary would have to be compensated, and in the absence of any discernable expressed intent to the contrary, it would be absurd to conclude that such compensation was anything other than also at the trial court's discretion. See *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999). It follows that we review the trial court's order directing Shirley to bear the cost of Adams's compensation to determine whether it is outside the range of principled outcomes. *Babcock*, 469 Mich at 269.

As noted, Shirley's counsel *offered* to have Adams do an accounting in order to dispel the need for further discovery or a future medical examination. Noting that Adams was already Shirley's tax attorney, Shirley's counsel argued that allowing Adams to do the accounting would avoid further expense. Her counsel argued: "If *we* can account for it, why not? Let's do it. *We* will account for it. Why spend the expense for experts and [independent medical evaluations] and all of that when *we* can have Mr. Adams, who has been Shirley's tax attorney for years, do a

full accounting for you and for them[?]" (Emphasis added.) The trial court clearly, and reasonably under the circumstances, expected Shirley to pay for Adams's services. Furthermore, Suzanne did not merely object on principle or for an unstated reason, but in fact made the reasonable argument that she disagreed with Shirley regarding the true issue in the case and an accounting could not replace a medical examination for the purpose of evaluating whether Shirley was vulnerable and in need of a conservator. On these facts, we do not find the trial court's imposition of Adams's fees solely on Shirley to be an unprincipled outcome.

The Estate argues that Suzanne should be responsible for the fees because the accounting was only made necessary by Suzanne's underlying petition, and Shirley had already been forced to expend money defending herself throughout this case. Once again, however, that merely establishes that it might also have been reasonable for the trial court to do so. As noted, Adams was Shirley's idea, at her insistence, over the objection of Suzanne, who *would* have had to bear much of the expense of discovery had Shirley not insisted on Adams's accounting. Shirley's counsel offered an accounting by Adams as a direct alternative to undergoing a medical examination and thus presumably expected to be the primary beneficiary of that accounting. The fact that the trial court could have done something different does not prove that it should have done so.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause