# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF FRASER,

                    Plaintiff-Appellee,

FOR PUBLICATION
January 14, 2016
9:00 a.m.

v

ALMEDA UNIVERSITY,

                    Defendant-Appellant/Third-Party
                    Plaintiff,

No. 323499
Macomb Circuit Court
LC No. 2013-000449-CZ

v

JOHN DOES 1-99,

                    Third-Party Defendants.

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

RIORDAN, J.

Defendant Almeda University appeals as of right the trial court's order granting plaintiff City of Fraser's motion for summary disposition. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves the Michigan Authentic Credentials in Education Act (hereinafter "the Act"), MCL 390.1601 *et seq*. Defendant is an online university, incorporated in the Caribbean Island of Nevis, that offers "Life Experiences Degrees" to prospective "students." All interactions with those students take place through defendant's website.

To obtain a degree, an applicant submits an electronic application and a résumé outlining the applicant's "verifiable professional and educational achievements." If defendant determines that an applicant is eligible to receive the requested degree, the student is required to make an online credit card payment of $499 for a bachelor's degree, $795 for a master's degree, or $1,495 for a doctorate degree. Once the applicant pays the online fee, defendant mails the desired degree directly to the applicant's home. In addition to providing degrees, defendant offers assistance with résumés, job applications, and interviews and markets promotional apparel bearing defendant's name for purchase.

-1-

On its website, defendant states that it has "over 26,000 online students in over 7,000 cities worldwide." It is undisputed that some of those students are Michigan residents. At one time, defendant highlighted on its website the success of two Michigan residents who were awarded degrees from defendant.

Plaintiff is a municipality located in Macomb County. Between 2004 and 2009, 16 of its employees, all police officers, obtained degrees from defendant. None of the employees were required to complete any classes, coursework, research, or exams to receive the degrees. At issue in this case are degrees issued to 11 of plaintiff's employees between June 6, 2003, and March 5, 2009. After obtaining these degrees from defendant, the 11 employees used the degrees to increase their salaries between $1,000 and $3,000 per year, depending upon the type of degree purchased. Along with increasing those employees' compensation, plaintiff reimbursed 11 of them with educational allowances. Overall, plaintiff paid a total of $143,848 to the employees for the purchase of Almeda degrees.

On January 31, 2013, plaintiff filed a one-count complaint against defendant, alleging that defendant violated the Act, MCL 390.1601 *et seq*., by holding itself out as an institution authorized to award academic degrees. Plaintiff sought more than $1 million in damages, $100,000 for each of plaintiff's employees who used their degrees for salary increases and tuition reimbursement.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(1) (court lacks jurisdiction over the party), (5) (party asserting claim lacks legal capacity to sue), and (8) (failure to state a claim). Most relevant to this appeal, defendant argued that the trial court did not have personal jurisdiction over defendant. The trial court disagreed and denied defendant's motion.

Plaintiff subsequently filed its own motion for summary disposition pursuant to MCR 2.116(C)(10), contending that defendant's admissions that it lacked accreditation under state or federal law entitled plaintiff to an order of liability against defendant and damages in plaintiff's favor. In its response, defendant denied liability on the basis that (1) the Act requires that degrees be issued or manufactured *in* Michigan to prove liability because Michigan cannot control behavior that lawfully occurs outside of the state, and (2) since the degrees were only mailed to Michigan residents, defendant did not violate the Act. Defendant also asserted that plaintiff was not damaged by defendant's conduct, but by its own employees who used the degrees to obtain additional pay and tuition reimbursement. Finally, defendant asserted that plaintiff waived its right to sue defendant under the Act because plaintiff, which had known about the situation since at least 2007, inexplicably waited until 2013 to file the action and continued to accept defendant's degrees from its employees, and increase the pay of its employees, even after it discovered the details of the way the degrees were earned and learned of defendant's lack of accreditation.

The trial court ruled in plaintiff's favor and awarded it $600,000 ($100,000 each for the six degrees issued by defendant after the Act took effect in 2005).

II. GENERAL STANDARDS OF REVIEW

-2-

We review a trial court's decision regarding a motion for summary disposition *de novo*. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012). Defendant's first claim on appeal arises from the trial court's denial of its motion for summary disposition under MCR 2.116(C)(1). "When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Yoost*, 295 Mich App at 219.

The rest of the issues raised on appeal arise from the trial court's grant of summary disposition in favor of plaintiff under MCR 2.116(C)(10). When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. PERSONAL JURISDICTION

Defendant first argues that the trial court erred in denying its motion for summary disposition on the ground that the court lacked personal jurisdiction over defendant. We disagree.

## A. STANDARD OF REVIEW

We review *de novo*, as a question of law, "whether a court possesses personal jurisdiction over a party." *Yoost*, 295 Mich App at 219. We also review *de novo* whether an exercise of jurisdiction over defendant, a non-resident corporation, is consistent with the notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *Id*.

Under a motion for summary disposition pursuant to MCR 2.116(C)(1),

[t]he plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition. The plaintiff's complaint must be accepted as true unless specifically contradicted by affidavits or other evidence submitted by the parties. Thus, when allegations in the pleadings are contradicted by documentary evidence, the plaintiff may not rest on mere allegations but must produce admissible evidence of his or her prima facie case establishing jurisdiction. [*Id*. at 221-222 (quotation marks and citations omitted).]

## B. ANALYSIS

In *Yoost*, 295 Mich App at 222-223, we summarized the proper analysis for determining whether a trial court has properly exercised personal jurisdiction over a defendant:

> When examining whether a Michigan court may exercise limited personal jurisdiction over a defendant, this Court employs a two-step analysis. First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident. Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution. [Quotation marks and citations omitted.]

Defendant challenges the trial court's exercise of personal jurisdiction. It argues that the court erred in exercising personal jurisdiction under Michigan's long-arm statute, MCL 600.715, because such an exercise was not consistent with constitutional due process.[1] In essence, defendant effectively concedes that, under the first step of the analysis, the trial court properly concluded that it could exercise limited personal jurisdiction over defendant under Michigan's long-arm statute. Accordingly, we focus our analysis on whether the trial court's exercise of jurisdiction over defendant comported with due process.

"The 'constitutional touchstone' of a due process analysis with respect to personal jurisdiction is whether the defendant purposely established the minimum contacts with the forum state necessary to make the exercise of jurisdiction over the defendant fair and reasonable." *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 433; 633 NW2d 408 (2001) (citations omitted).

> Courts employ a three-part test to determine whether a defendant has minimum contacts with Michigan to the extent that limited personal jurisdiction may be exercised in accordance with due process.
>
> > First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the

---

[1] Defendant states that the trial court concluded that it had limited personal jurisdiction over defendant under MCL 600.715(1). However, the trial court expressly found that it could exercise limited personal jurisdiction over defendant pursuant to MCL 600.715(5).

defendant reasonable. [*Id.* (quotation marks and citations omitted).]

The record shows that the first prong of the test was met in this case. " '[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities." *Id.* at 434 (quotation marks and citation omitted). Similarly, when a party "reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state," the party has "availed [it]self of the privilege of conducting business there." *Burger King Corp v Rudzewicz,* 471 US 462, 473-476; 105 S Ct 2174; 85 L Ed 2d 528 (1985).

By accepting applications and payments from plaintiff's employees through its website, even after learning that they lived in Michigan—and subsequently continuing to transact business with those employees in Michigan by awarding them degrees, mailing diplomas to Michigan addresses, and offering additional alumni products and services—defendant "purposefully availed itself of the privilege of conducting activities in Michigan." *Yoost*, 295 Mich App at 223 (quotation marks and citation omitted). As such, the record shows that defendant engaged Michigan customers in a regular and continuing manner. Moreover, defendant highlighted the personal success stories of Michigan residents on its website after they purchased degrees from defendant, thereby advertising the availability, and benefits, of its degrees for Michigan residents.

We find *Neogen Corp v Neo Gen Screening, Inc*, 282 F3d 883 (CA 6, 2002), instructive in this case. In *Neogen Corp*, the Sixth Circuit Court of Appeals relied on *Zippo Mfg Co v Zippo Dot Com, Inc.,* 952 F Supp 1119, 1124 (WD Pa, 1997), in determining whether a company purposefully availed itself of a state through its website, and provided the following summary of the relevant inquiry:

A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997) (using a "sliding scale" of interactivity to identify Internet activity that constitutes purposeful availment). In *Zippo,* the district court held that the defendant manifested its purposeful availment of the privilege of acting in Pennsylvania when it "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," knowing that the result of these Internet contacts would be to perform services for Pennsylvania customers in part through the transmission of electronic messages to Pennsylvania. *Id.* at 1126. Such intentional interaction with the residents of a forum state, the *Zippo* court concluded, is evidence of a conscious choice to transact business with inhabitants of a forum state in a way that the passive posting of information accessible from anywhere in the world is not. *Id.* [*Neogen Corp*, 282 F3d at 890.]

The Sixth Circuit found that it was not clear that the website at issue in *Neogen Corp* necessarily provided a basis for jurisdiction because it "consist[ed] primarily of passively posted information." *Id*. at 890. Nevertheless, it found that the company's 14 annual business transactions with Michigan customers constituted a "purposeful availment." *Id*. at 891-892. Most notably, the court reasoned:

> Although customers from Michigan contacted NGS, and not the other way around, NGS could not mail test results to and accept payment from customers with Michigan addresses without intentionally choosing to conduct business in Michigan. This establishes that NGS chose to contract with customers from Michigan. Additionally, a part of NGS's service is the packaging of the results of the tests that it performs. When NGS mails these test results to its Michigan customers, or sends them a password to be used interactively on its website, NGS reaches out to Michigan to perform its services there. Neogen has therefore alleged facts which, when viewed in the light most favorable to Neogen, support a finding that NGS purposefully availed itself of the privilege of doing business in Michigan. [*Id*. at 892.]

Here, defendant's conduct through its website was more similar to the company in *Zippo* than in *Neogen Corp*. Further, as in *Neogen*, we conclude that defendant could not mail diplomas to, and accept payments from, students "with Michigan addresses without intentionally choosing to conduct business in Michigan." *Id*. at 892. Thus, it is clear that defendant's conduct constituted more than "merely 'random,' 'fortuitous,' or 'attenuated' " contacts with Michigan. *Oberlies*, 246 Mich App at 434, quoting *Burger King*, 471 US at 475.

Second, contrary to defendant's claims on appeal, it is evident that the cause of action, *i.e.*, the issuance of fraudulent academic credentials in violation of MCL 390.1604, arose directly from defendant's activities in Michigan, *i.e.*, conducting an academic program and issuing diplomas for a price to Michigan residents. We reject defendant's argument that "there is a complete lack of privity between [defendant] and [plaintiff]," as privity is not a requirement to exercise personal jurisdiction under Michigan law. Likewise, given defendant's clear conduct in this case, we reject defendant's claim that jurisdiction is improper based on the ways in which the actions of plaintiff's employees or the terms of its union contracts may have injured plaintiff.

Finally, under the third prong of the test, "defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable." *Oberlies*, 246 Mich App at 433 (quotation marks and citation omitted). We reject defendant's claim that it was impossible for defendant to foresee liability in Michigan for its conduct. Again, the record clearly indicates that defendant established multiple business relationships with Michigan residents and issued diplomas to customers in Michigan after accepting the customers' applications and fees. Especially given that defendant's business is conducted entirely online, and defendant does not have an actual campus, it is sensible that it should be subject to jurisdiction in the states—including Michigan—where it conducts its business. Therefore, we conclude that the trial court's exercise of jurisdiction over defendant was reasonable.

IV. APPLICABILITY OF MCL 390.1603

Defendant next argues that the trial court improperly concluded that MCL 390.1603 applied to defendant. We disagree.

## A. STANDARD OF REVIEW

As stated *supra*, this Court reviews a trial court's grant or denial of summary disposition *de novo. Moraccini v Sterling Hts,* 296 Mich App 387, 391; 822 NW2d 799 (2012).

"Matters of statutory interpretation are questions of law, which we review under a de novo standard of review." *Shorecrest Lanes & Lounge, Inc v Liquor Control Comm'n,* 252 Mich App 456, 460; 652 NW2d 493 (2002). We restated the following principles of statutory interpretation in *Book-Gilbert v Greenleaf,* 302 Mich App 538, 541-542; 840 NW2d 743 (2013):

> The judiciary's objective when interpreting a statute is to discern and give effect to the intent of the Legislature. First, the court examines the most reliable evidence of the Legislature's intent, the language of the statute itself. When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined. Effect must be given to every word, phrase, and clause in a statute, and the court must avoid a construction that would render part of the statute surplusage or nugatory. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. . . . The courts may not read into the statute a requirement that the Legislature has seen fit to omit. When the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose. . . . [Quotation marks and citations omitted.]

Additionally,

> [w]e may not speculate regarding the probable intent of the Legislature beyond the words expressed in the statute. When reasonable minds may differ with regard to the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. [*Oberlies*, 246 Mich App at 429-430 (citations omitted).]

## B. ANALYSIS

MCL 390.1603 provides: "A person shall not knowingly issue or manufacture a false academic credential in this state." Defendant Almeda University conceded in the trial court that any academic credential issued or manufactured by it qualifies as a "false academic credential" under Michigan law. Both parties also agree that defendant does not "manufacture" false academic credentials in Michigan. Accordingly, defendant's only argument on appeal is that the statute is not applicable to its conduct because it did not "issue" false academic credentials "in this state." In particular, defendant asserts that the statute only applies to false academic credentials that *originate* in Michigan. We reject defendant's claim.

The term "issue" in MCL 390.1603 is not defined by the Act. "When the Legislature has not defined a statute's terms, we may consider dictionary definitions to aid our interpretation." *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 434; 852 NW2d 650 (2014). We find the following definitions of "issue" in *Merriam-Webster's Collegiate Dictionary* (2014) relevant here: "to appear or become available through being officially put forth or distributed," "to cause to come forth: DISCHARGE, EMIT," "to put forth or distribute usu. officially," and "to send out for sale or circulation: PUBLISH." Similarly, *Black's Law Dictionary* (10th ed) defines "issue" as "**1.** To accrue <rents issuing from land> **2.** To be put forth officially <without probable cause, the search warrant will not issue> **3.** To send out or distribute officially <issue process> <issue stock>."

In light of these definitions, "issue" and "in this state" for purposes of MCL 390.1603 means to put forth or distribute officially in Michigan, such that a false academic credential is "issued" in Michigan if it is distributed to or provided by mail or electronically to an individual in the state of Michigan. This definition of "issue" is consistent with the Act's preamble, which describes that the purpose of the statute as being "to prohibit the issuance or manufacture of false academic credentials; and to provide remedies" for such issuance.[2] See *Oberlies*, 246 Mich App at 429-430.

"The resolution of an ambiguity or vagueness that achieves a statute's purpose should be favored over the resolution that frustrates its purpose."[3] Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 56. However, the purpose (1) must be discerned from the text of the statute itself, not from an external source, such as legislative history; (2) must be defined in a precise manner, not in a way that allows one to "smuggle[] in" a given interpretation; (3) must be delineated as concretely as possible, not in an abstract manner; and (4) may not be used to contradict or supplement the statutory text, except in the rare circumstance of a glaring scrivener's error. *Id.* at 56-57. See also *Frost-Pack Distrib Co*

---

[2] The preamble states in full: "AN ACT to prohibit the issuance or manufacture of false academic credentials; and to provide remedies." See *King v Ford Motor Credit Co*, 257 Mich App 303, 311-312; 668 NW2d 357 (2003) ("A preamble is not to be considered authority for construing an act, but it is useful for interpreting statutory purpose and scope.").

[3] Judge Murray correctly points out that the majority and the partial concurrence/dissent agree on the most relevant definition of the term "issue." However, like the parties, we apparently disagree on the meaning of "issue" given its modification by the phrase "in this state" in MCL 390.1603. A statutory provision is ambiguous if "it is equally susceptible to more than a single meaning." *Fluor Enterprises, Inc. v. Dep't of Treasury,* 477 Mich 170, 177 n 3; 730 NW2d 722 (2007) (quotation marks and emphasis omitted), citing *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004); see also *Alvan Motor Freight, Inc v Dep't of Treasury,* 281 Mich App 35, 39-40; 761 NW2d 269 (2008) ("A provision in a statute is ambiguous only if it irreconcilably conflicts with another provision, or when it is *equally* susceptible to more than a single meaning." [Quotation marks omitted.]).

*v City of Grand Rapids*, 399 Mich 664, 682-683; 252 NW2d 747 (1977); *Oberlies*, 246 Mich App at 429-430.

As such, we find that narrowly construing the word "issue" in the manner advocated by defendant would thwart the purpose of the statute, which clearly seeks to address the problem of *all* false academic credentials that affect the state of Michigan and its residents, not just the academic credentials that are produced and physically sent out from a location in Michigan. Defendant has misinterpreted the plain meaning of "issue," in conjunction with "in this state," due to its reliance on statutes and court rules that are unrelated to the Act and the circumstances of this case. See *Book-Gilbert*, 302 Mich App at 541-542.

Additionally, we are unpersuaded by defendant's citation of other states' statutes that regulate similar conduct but include language that is distinct from that in MCL 390.1603 because these statutes are inapposite and simply inapplicable in this case. However, we do note that the statute cited by defendant with the language most similar to MCL 390.1603—Washington's RCW 9A.60.070—defines "issuing" in a manner that encompasses our construction of "issue" in this case. In relevant part, that statute provides:

> (1) A person is guilty of issuing a false academic credential if the person knowingly:
>
> (a) Grants or awards a false academic credential or offers to grant or award a false academic credential in violation of this section;
>
> (b) Represents that a credit earned or granted by the person in violation of this section can be applied toward a credential offered by another person;
>
> (c) Grants or offers to grant a credit for which a representation as described in (b) of this subsection is made; or
>
> (d) Solicits another person to seek a credential or to earn a credit the person knows is offered in violation of this section. [RCW 9A.60.070(1).]

Furthermore, defendant relies on the legislative analysis of the bill before it was signed into law, see House Legislative Analysis, HB 136, June 15, 2005, in order to argue that "[t]he purpose of [MCL 390.1603] is to prohibit the formation of 'diploma mills' in the State of Michigan." "[L]egislative analyses are of very little value in reading a statute, [but] they have some value to courts as casting light on the reasons that the Legislature may have had and the meaning they intended for an act." *Cheboygan Sportsman Club v Cheboygan Co Prosecuting Attorney*, 307 Mich App 71, 81; 858 NW2d 751 (2014). However, "the language of the statute is the best source for determining legislative intent." *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004).

While we look only to the language of a statute to determine legislative intent, it is noteworthy that, contrary to defendant's portrayal, the legislative analysis of the statute at issue clearly indicates that the purpose of the Act is to prevent the existence and use of false academic credentials in the state of Michigan. The analysis states that false academic credentials tend to mislead the general public, jeopardize employers or other individuals who may rely on an

individual's false credentials, and may threaten the viability of legitimate distance learning institutions. See House Legislative Analysis, HB 136, June 15, 2005. Moreover, contrary to defendant's contention, the analysis specifically references the lack of federal regulation and leniency of other states' laws that allow diploma mills to flourish, and it emphasizes the proliferation of substandard or fraudulent institutions with the rise of the Internet. This supports the conclusion that the bill was intended to address the effects *in Michigan* of false academic credentials that are prepared by institutions outside of Michigan and issued in this state.

Thus, we agree with the trial court that defendant issued fraudulent educational credentials in Michigan and violated MCL 390.1603 when it distributed false academic credentials by mail to individuals in Michigan.

## V. APPLICABILITY OF MCL 390.1605

Defendant next argues that the trial court erred in finding that plaintiff suffered damages as a result of defendant's actions. We disagree.

### A. DAMAGE REQUIREMENT

MCL 390.1605 provides: "A person damaged by a violation of this act may bring a civil action and may recover costs, reasonable attorney fees, and the greater of either the person's actual damages or $100,000.00." As discussed *supra*, defendant's conduct constituted the issuance of false academic credentials under the Act. Likewise, plaintiff demonstrated that it was damaged by defendant's acts because it paid for fraudulent academic credentials and, based upon those credentials, increased employee salaries.

Although defendant is correct that plaintiff's employees are also a cause of plaintiff's loss, defendant points to no requirement under Michigan law that defendant must be the sole cause of plaintiff's loss in order for plaintiff to recover under the Act. Instead, the plain language of the statute requires only that the plaintiff be "damaged by a violation of this act." Cf. *Bobbitt v Academy of Court Reporting, Inc*, 252 FRD 327, 341 (ED Mich, 2008) (concluding that proof of reliance was not required to prove a claim of MCL 390.1603 because such an element was not apparent from the text of the statute); see also Michigan Non-Standard Jury Instructions Civil § 18:2. "[C]ourts may not read into the statute a requirement that the Legislature has seen fit to omit. When the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose." *Book-Gilbert*, 302 Mich App at 542 (quotation marks and citations omitted). Moreover, an individual's act in using a false academic credential to gain a promotion is governed by a separate statutory provision, *i.e.*, MCL 390.1604, and there is no indication that both provisions cannot function harmoniously or cannot both apply to a given situation. As such, we find no basis for concluding that other actors' role in damaging plaintiff precludes a finding of liability in this case.

Accordingly, we reject defendant's claim that the trial court erred in concluding that plaintiff was damaged by defendant's violation of the Act.[4]

## B.  UNCLEAN HANDS

Defendant also asserts that the trial court erroneously applied the doctrine of unclean hands.  In particular, it argues that it was entitled to assert that plaintiff waived its right to damages because it knowingly accepted the fraudulent degrees from its employees and, therefore, acted with unclean hands.  We disagree.

One seeking the protection of an equitable defense must do so with clean hands, and "a party who has acted in violation of the law is not before a court of equity with clean hands." *Attorney Gen v PowerPick Club*, 287 Mich App 13, 52; 783 NW2d 515 (2010) (quotation marks and citation omitted).  Here, defendant acted in violation of MCL 390.1603.  Accordingly, defendant was barred from raising an equitable defense against plaintiff because "[a] defendant with unclean hands may not defend on the ground that the plaintiff has unclean hands as well." *Id*. at 53.

## VI.  STATUTE OF LIMITATIONS

Defendant next argues that plaintiff's claim is barred by the statute of limitations and doctrine of laches.  We agree that the statute of limitations bars all but one of plaintiff's claims.

## A.  STANDARD OF REVIEW

We "review de novo the question whether a claim is barred by the statute of limitations and the issue of the proper interpretation and applicability of the limitations periods." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014).  Likewise, we review de novo a trial court's decision regarding whether to apply an equitable doctrine, such as laches. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

## B. ANALYSIS

The Act does not contain its own statute of limitations.  Therefore, plaintiff's claims are subject to the six-year statute of limitations found in MCL 600.5813.  See *Attorney General v Harkins*, 257 Mich App 564, 569; 669 NW2d 296 (2003).

---

[4] We decline to address the additional issue raised by defendant regarding whether the trial court erroneously granted summary disposition before discovery was completed because this issue was not raised in the statement of questions presented.  See MCR 7.212(C)(5) (requiring an appellant to provide a concise statement of questions involved in the appeal); *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001) ("Independent issues not raised in the statement of questions presented are not properly presented for appellate review.").

Defendant contends that all of the violations of the Act except for one fall outside the applicable six-year statute of limitation. Plaintiff filed its complaint on January 31, 2013. Thus, to fall within the limitations period, the degrees in question must have been issued no earlier than January 31, 2007. Plaintiff appears to concede that only one of the 11 degrees in question was issued on or after January 31, 2007. The trial court, however, applied the "continuing violations doctrine" to plaintiff's claims, concluding that *each* of the 11 claims continued to accrue until 2009 when defendant issued the last degree to one of plaintiff's employees. The trial court's application of the continuing violations doctrine was in error.

Under the doctrine, "[w]here a defendant's wrongful acts are of a continuing nature, the period of limitation will not run until the wrong is abated; therefore, a separate cause of action can accrue each day that defendant's tortious conduct continues." *Harkins*, 257 Mich App at 572 (quotation marks and citation omitted; alteration in original). However, the Michigan Supreme Court has held that the continuing violations doctrine is contrary to Michigan law and "has no continued place in the jurisprudence of this state." *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 284, 290; 696 NW2d 646 (2005). While *Garg* was a discrimination case involving a three-year statute of limitations, "[t]he holding of *Garg* does not appear limited to discrimination cases; rather, the Court applied the plain text of the limitations and accrual statutes" in this state. *Terlecki v Stewart*, 278 Mich App 644, 655; 754 NW2d 899 (2008).

Thus, only one of plaintiff's claims, that which occurred after January 31, 2007, is allowed under the statute of limitations and the trial court erred in holding otherwise.

However, contrary to defendant's position, the doctrine of laches does not bar this claim. "The doctrine of laches is triggered by the plaintiff's failure to do something that should have been done under the circumstances or failure to claim or enforce a right at the proper time." *PowerPick Club*, 287 Mich App at 51. But, the doctrine only is "applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Pub Health Dep't v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996); see also *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 457; 761 NW2d 846 (2008) ("For laches to apply, inexcusable delay in bringing suit must have resulted in prejudice."). "The defendant has the burden of proving that the plaintiff's lack of due diligence resulted in some prejudice to the defendant." *Twp of Yankee Springs v Fox*, 264 Mich App 604, 612; 692 NW2d 728 (2004). The Michigan Supreme Court previously stated that when a party files their claim within the relevant period of limitation, "any delay in the filing of the complaint was presumptively reasonable, and the doctrine of laches is simply inapplicable." *Michigan Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 200; 596 NW2d 142 (1999). However, this Court has held that courts may apply the doctrine of laches to bar actions at law, even when the statute of limitations established by the Legislature has not expired. *Tenneco*, 281 Mich App at 457.

Here, defendant is not entitled to assert the equitable defense of laches because it came before the trial court with unclean hands. *PowerPick Club*, 287 Mich App at 50-52. Furthermore, defendant proffered no evidence in the trial court demonstrating prejudice related to the filing of plaintiff's remaining claim. See *Rivergate Manor*, 452 Mich at 507. Defendant argues that it was prejudiced because plaintiff was in the best position to inform defendant that its degrees constituted false academic credentials under the Act after it was passed in 2005.

Accordingly, defendant asserts that plaintiff's failure to bring the issue to its attention and continued acceptance of its degrees prevented defendant from taking action to prevent its alleged violations of MCL 390.1603. However, defendant has cited no authority indicating that plaintiff had an obligation to inform defendant that its conduct was illegal, and defendant's arguments do not demonstrate that plaintiff's delay caused "a corresponding *change of material condition* that result[ed] in prejudice to [defendant]." *Rivergate Manor*, 452 Mich at 507 (emphasis added); see also *Twp of Yankee Springs*, 264 Mich App at 612. Plaintiff's delay in filing the claim in no way prevented defendant from ceasing its illegal conduct or otherwise realizing that its issuance of diplomas in Michigan violated the Act.

Thus, the trial court properly concluded that the doctrine of laches does not bar plaintiff's claim in this case.

## VII. DORMANT COMMERCE CLAUSE

Defendant also asserts that MCL 390.1603, as applied, constitutes a violation of the dormant Commerce Clause.[5] Because defendant failed to raise this issue in the trial court, it is not preserved for appeal. *Ligon v City of Detroit*, 276 Mich App 120, 129; 739 NW2d 900 (2007). Accordingly, we could decline to review this issue. See *id.*; *Gilson v Dep't of Treasury*, 215 Mich App 43, 52; 544 NW2d 673 (1996) (declining to review the plaintiffs' unpreserved dormant Commerce Clause claim).

Nonetheless, defendant's argument has no merit. Contrary to its speculative hypotheticals, we find no basis for defendant's conclusion that the statute "directly controls commerce occurring wholly outside the boundaries of a State [and] exceeds the inherent limits of the enacting State's authority." *Am Beverage Ass'n v Snyder*, 735 F3d 362, 373 (CA, 6) (quotation marks omitted), quoting *Healy v Beer Inst, Inc*, 491 US 324, 336; 109 S Ct 2491; 105 L Ed 2d 275 (1989). Additionally, under the relevant two-part inquiry, defendant does not assert, and we discern no indication, that the statute "facially discriminates against interstate commerce." *Wheeler v Charter Twp of Shelby*, 265 Mich App 657, 668; 697 NW2d 180 (2005). Finally, despite defendant's tenuous speculation, we conclude that the statute "merely regulates evenhandedly with only incidental effects upon interstate commerce," and that there is no indication that "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefit." *Id.* at 669 (quotation marks and citations omitted).

## VIII. CONCLUSION

Defendant has failed to establish that the trial court's exercise of jurisdiction was erroneous. Additionally, the trial court properly concluded that defendant's conduct constituted

---

[5] The United States Constitution grants Congress the power to regulate commerce with foreign nations and among the states. US Const, art III, § 8, cl 3. The dormant Commerce Clause is an extension of the Commerce Clause, and it "prohibits state laws that discriminate against or unduly burden interstate commerce." *Nat'l Wine & Spirits, Inc v State*, 477 Mich 1088, 1089; 729 NW2d 234 (2007) (MARKMAN, J., concurring).

-13-

the issuance of false academic credentials in violation of the Act.  However, the trial court erred in holding defendant liable for the issuance of false academic credentials prior to January 31, 2007.  Finally, we reject defendant's argument that the Act violates the dormant Commerce Clause.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion concerning the damages owed to plaintiff.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Patrick M. Meter