*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

QUINTESSENCE HOTEL,

      Plaintiff-Appellant,

v

JAMES L. DECKEBACH,

      Defendant-Appellee.

UNPUBLISHED
December 18, 2024
12:41 PM

No. 366594
Oakland Circuit Court
LC No. 2022-196746-CZ

Before: O'BRIEN, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this action for breach of contract, plaintiff Quintessence Hotel appeals as of right the trial court's order granting summary disposition to defendant James L. Deckebach under MCR 2.116(C)(1) for lack of personal jurisdiction. Plaintiff argues that the trial court failed to apply the correct standard for reviewing a motion under MCR 2.116(C)(1), and should have pierced the corporate veil to exercise jurisdiction over defendant. We vacate the order and remand for further but limited proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a hotel in Anguilla managed by directors Geoffrey and Kathleen Fieger from its registered office in Southfield, Michigan.[1] Defendant is the owner of a company called Wine Cellar Innovations, LLC (WCI), which is registered in Ohio, where defendant lives.[2]

In 2021, plaintiff contracted with WCI for the construction of a custom wine rack at the hotel in Anguilla, making a deposit of $27,428.18. Plaintiff initiated this action against defendant

---

[1] For some undisputed facts we reference plaintiff's complaint.

[2] Plaintiff alleged in its complaint that defendant is the owner and operator of WCI, and asserted in its response to defendant's summary-disposition motion that defendant is WCI's *sole* owner. Defendant refers to himself as a member of WCI.

on October 18, 2022, alleging that WCI and defendant,[3] despite claiming to be the world's foremost designer and manufacturer of custom wine cellars and racks, failed to deliver the wine rack or return plaintiff's deposit before filing for Chapter 7 bankruptcy protection in the Southern District of Ohio on August 10, 2022. On the basis of these allegations, plaintiff claimed fraud and detrimental reliance, breach of contract, unjust enrichment, conversion, exemplary damages, and piercing the corporate veil because:

> [U]nbeknownst to Plaintiff, when the deposit was paid, Defendant had a scheme in place whereas [WCI] would accept deposits from unsuspecting customers, fail to deliver on promises, and declared bankruptcy to protect any funds received by Defendant, JAMES L. DECKEBACH.

Defendant answered plaintiff's complaint and moved for summary disposition under MCR 2.116(C)(1), asserting that the trial court lacked personal jurisdiction over him under Michigan's long-arm statute for individuals, MCL 600.705, because he had no connection to Michigan, business or otherwise, and "[n]one of the facts Plaintiff does or could rely upon for minimum contacts and personal jurisdiction over the Defendant individual form a part of the substantive alter ego/piercing the corporate veil claims." In response, plaintiff challenged defendant's lack of support for his motion, asserting: "[D]efendant misapprehends the standard of review. His ipse dixit denials of Plaintiff's allegations have no legal effect upon review of his motion under MCR 2.116(C)(1)[.]" Further, plaintiff argued that its allegations and documentary evidence made out a prima facie case for the court to exercise jurisdiction under Michigan's long-arm statute for corporations, MCL 600.715, referencing WCI's alleged fraudulent advertising to Michigan customers, and that piercing the corporate veil to extend that jurisdiction to defendant would be justified here because defendant used WCI, an undercapitalized entity, to enter into fraudulent contracts that he, the sole owner, knew the company could not perform.

Defendant reiterated his arguments for summary disposition in reply, asserting plaintiff presented no substantive facts showing that he operated WCI as a mere alter ego in an effort to solicit, collect, and convert funds from plaintiff. The trial court ruled on the record that plaintiff had not met its burden of establishing the court's personal jurisdiction over defendant, stating:

> None of the criteria under MCL 600.711 or 600.705 apply here in the -- in a way in the Court's mind that forecloses the Court from granting summary disposition under (c)(1). Therefore, the Court need not even address the second prong of the personal jurisdiction test, i.e., whether it comports with due process.
>
> * * *
>
> Despite the Plaintiff's assertion otherwise, the deposit paid for the work to be done was tendered to the non-party [WCI], not Defendant individually. The Court noting of course the case is regarding requesting to pierce the corporate veil. Defendant individually has not advertised or even been to the State of Michigan and Plaintiff

---

[3] At times in the complaint, plaintiff appears to use "defendant" in reference to both WCI and the only named defendant – Deckebach.

has not, uh, established that the non-party's Michigan advertising confers jurisdiction over Defendant individually for purposes of this analysis.

From the Court's perspective, Plaintiff is attempting to utilize Michigan courts certainly who are most convenient to Plaintiff to attempt to recoup monies directly from Defendant for the actions of a corporate entity on monies spent on a business venture in the Caribbean and paid to an Ohio-based corporate entity. Plaintiff argues the Michigan Courts have found veil piercing justified on grounds in an under-capitalized entity entered into fraudulent contracts where the sole owner knew or -- knew he could not perform but has offered nothing to support an argument that that is what occurred here. Even assuming Plaintiff is -- is or would be successful on its theory of recovery, Plaintiff has not satisfied the Court that Defendant individually for purposes of a (c)(1) motion has sufficient Michigan contacts thus exercising personal jurisdiction in this case at this time is appropriate.

That ruling was codified in an order granting summary disposition. This appeal followed.

## II. STANDARDS OF REVIEW

Summary disposition may be granted under MCR 2.116(C)(1) when "[t]he court lacks jurisdiction over the person or property." MCR 2.116(C)(1). "This Court reviews de novo a trial judge's decision on a motion for summary disposition." *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012). "We review de novo, as a question of law, 'whether a court possesses personal jurisdiction over a party . . . .' " *Fraser v Almeda Univ*, 314 Mich App 79, 86; 886 NW2d 730 (2016), quoting *Yoost*, 295 Mich App at 219. "[T]he legal question of whether the exercise of personal jurisdiction over a nonresident . . . is consistent with the notions of fair play and substantial justice required by the Due Process Clause of the Fourteenth Amendment, [is] likewise review[ed] de novo." *Yoost*, 295 Mich App at 219.

When reviewing a trial court's decision on a motion for summary disposition under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party. "The plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition." The plaintiff's complaint must be accepted as true unless specifically contradicted by affidavits or other evidence submitted by the parties. Thus, when allegations in the pleadings are contradicted by documentary evidence, the plaintiff may not rest on mere allegations but must produce admissible evidence of his or her own prima facie case establishing jurisdiction. [*Id*. at 221 (citations omitted).]

## III. JURISDICTION

Plaintiff argues that the trial court erred in granting summary disposition because it made an uncontroverted prima facie showing of the court's jurisdiction over WCI, which could be imputed to defendant by piercing the corporate veil.

-3-

Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party. Jurisdiction over the person may be established by way of general personal jurisdiction or specific (limited) personal jurisdiction. The exercise of general jurisdiction is possible when a defendant's contacts with the forum state are of such nature and quality as to enable a court to adjudicate an action against the defendant, even when the claim at issue does not arise out of the contacts with the forum. When a defendant's contacts with the forum state are insufficient to confer general jurisdiction, jurisdiction may be based on the defendant's specific acts or contacts with the forum. Our Legislature has provided long-arm statutes to allow courts to take jurisdiction over nonresident corporations over theories of general and specific jurisdiction. [*Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 427; 633 NW2d 408 (2001) (citations omitted).]

When examining whether a Michigan court may exercise limited personal jurisdiction over a defendant, the Court employs a two-step analysis. "First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment." Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident. "Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution." [*Yoost*, 295 Mich App at 222-223 (citations omitted).]

Although in its ruling the trial court examined the general and limited jurisdiction statutes related to individuals, MCL 600.705; MCL 600.711, plaintiff's argument, both below and on appeal, seems to be that the trial court should have exercised jurisdiction over defendant through jurisdiction over WCI under the long-arm statute for corporations, MCL 600.715, by piercing the corporate veil.[4] Thus, we first look to whether plaintiff made an uncontroverted prima facie showing of jurisdiction over WCI under MCL 600.715 and in accordance with the principles of due process, and we determine that it did.

A court may exercise limited jurisdiction over a corporation, so long as such jurisdiction would comport with due process, when the corporation: (1) transacts any business within the state; (2) does or causes any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) owns, uses, or possesses any real or tangible personal property in the state; (4) contracts to insure any person, property, or risk in the state; or (5) enters into a contract for services to be performed or for materials to be furnished in the state. MCL 600.715. And we employ a three-

---

[4] Defendant does not challenge plaintiff's theory that the proper way to review this issue is by focusing on the potential jurisdiction of a nonparty, and then imputing that to the individual. Thus, we accept for this opinion only that this is a viable theory.

part test to determine whether the exercise of limited personal jurisdiction comports with due process:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Yoost*, 295 Mich App at 223 (quotation marks and citation omitted).]

Plaintiff argued below and again on appeal that WCI's advertisement in Michigan amounted to the transaction of business in Michigan under MCL 600.715(1), citing this Court's decision in *Almeda*. In contrast, defendant asserts the facts are more akin to those at issue in *Oberlies*.

The plaintiff in *Oberlies* was injured loading onto a Canadian ski lift at a ski facility which she visited after seeing an advertisement in a Michigan newspaper. *Oberlies*, 246 Mich App at 426. She sued the ski facility for negligence in Michigan, arguing that the trial court had jurisdiction over the facility as a result of its Michigan advertisement, but the court disagreed and granted summary disposition. *Id*. This Court upheld the trial court's decision, finding that while the advertisement constituted the transaction of business in Michigan under MCL 600.715(1), exercising personal jurisdiction over the Canadian ski facility did not comport with the principles of due process. *Id*. at 431-435. In doing so, the Court held that "in order for a foreign defendant to be compelled to defend a suit brought in Michigan where the defendant's contacts with Michigan are limited solely to advertising aimed at Michigan residents, the defendant's instate advertising activities must, in a natural and continuous sequence, have caused the alleged injuries forming the basis of the plaintiff's cause of action." *Id*. at 437. In other words, "[c]ontacts with a forum state that are merely 'random,' 'fortuitous,' or 'attenuated' may not be the basis for haling a defendant into a foreign jurisdiction." *Id*. at 434. Using that standard, the Court reasoned that the connection between the ski facility's advertisement in Michigan and the plaintiff's cause of action was too attenuated to exercise jurisdiction, stating: "[P]laintiff's injuries are alleged to result from conduct that occurred solely in Canada. Plaintiff's complaint alleges that defendant, through its agents, negligently operated the ski lift from which plaintiff fell and was negligent in the manner in which it responded to the accident. Plaintiff does not claim injury directly resulting from defendant's advertisements in Michigan." *Id*. at 435, 438.

The *Almeda* Court decided differently under the circumstances at issue there. In *Almeda*, municipal employees purchased degrees from an online university and obtained salary increases as a result. *Almeda Univ*, 314 Mich App at 83-84. The municipality subsequently filed suit against the university in Michigan alleging a violation of Michigan's statute requiring university accreditation. *Id*.

This Court held that the trial court properly exercised jurisdiction over the university under MCL 600.715(1), finding that the university consciously transacted business with Michigan residents through its website by accepting applications and payment from the municipality's employees, even after learning they lived in Michigan, and by "highlight[ing] the personal success stories of Michigan residents on its website after they purchased degrees from [the university],

thereby advertising the availability, and benefits, of its degrees for Michigan residents . . . ." *Id*. at 89. And, in contrast to *Oberlies*, the Court determined that the municipality's cause of action arose from the university's activities in Michigan. *Id*. at 91-92.

Like in *Almeda*, the evidence here establishes a prima facie showing of proper jurisdiction over *WCI* under MCL 600.715(1) that comports with due process, and that defendant has failed to adequately contradict. Plaintiff alleged in its complaint that WCI held itself out as the world's foremost designer and manufacturer of custom wine cellars and racks, and argued in its response to defendant's summary-disposition motion that WCI's advertisements demonstrated that WCI consciously transacted business in Michigan. Defendant offered no affidavit or documentary evidence to the contrary, see *Yoost*, 295 Mich App at 221, only stating in its summary-disposition motion that: "[T]here was no specific advertising to Michigan residents, and it appears that Plaintiff sought out this Ohio LLC to perform work and furnish materials in Anguilla. Assuming [WCI] did conduct advertising in Michigan (it did not) summary disposition would still be required due to the lack of alleged injury from that advertising." But that statement was not made in an affidavit, and was directly contradicted by screenshots of WCI's website attached by plaintiff to its response brief, which show WCI touting the work it performed in Michigan, along with associated client reviews of that work.

The above demonstrates purposeful availment beyond merely random, fortuitous, or attenuated contact in Michigan to satisfy the first prong of the due process analysis. See *Oberlies*, 246 Mich App at 434. Additionally, plaintiff's causes of action—breach of contract, unjust enrichment, and fraud for failure to complete the work or return the deposit—arose from WCI's activities in Michigan. From the evidence available, WCI advertised in Michigan with the intent to solicit business, and entered into a contract for that business with a company whose registered office is in Michigan. See *Yoost*, 295 Mich App at 223. Finally, looking to the third factor in the due process analysis, the evidence demonstrates that WCI's activities were substantially connected with Michigan. See *id*. WCI advertised to Michigan consumers through its website, and entered into a contract for services and products with a company registered in Michigan. Thus, despite the fact that the actual work would have been performed in Anguilla, WCI should have foreseen potential liability in Michigan for its failure to complete the contract or return the deposit. See *Almeda Univ*, 314 Mich App at 92.

We next turn to whether the trial court should have imputed jurisdiction to defendant as an individual by piercing the corporate veil of WCI. Plaintiff argues the trial court should have pierced the corporate veil to exercise jurisdiction over defendant because, "[n]umerous courts applying the Michigan test have found veil-piercing justified on grounds that an undercapitalized entity entered into fraudulent contracts that the sole owner knew he could not perform," and "[p]laintiff specifically alleged that Defendant, as sole managing member of [WCI], used that undercapitalized entity to defraud Michigan customers." In its complaint, plaintiff alleged that defendant devised a scheme whereby WCI would accept deposits from customers knowing the work could not be completed before declaring bankruptcy to protect the funds he received.

Generally, "the law treats a corporation as an entirely separate entity[.]" *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 715; 854 NW2d 509 (2014) (quotation marks and citation omitted). "However, when the fiction is invoked to subvert justice, it may be ignored by the courts. *Id*. (quotation marks and citation omitted). To pierce the corporate veil:

First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff. [*Id.* at 716 (quotation marks and citation omitted).]

Plaintiff is correct that this Court has pierced the corporate veil where the owner of an undercapitalized company enters into contracts the owner knows the company cannot perform. See *Green v Ziegelman*, 310 Mich App 436, 461-463; 873 NW2d 794 (2015). Even accepting plaintiff's allegations as true, however, neither they nor the Better Business Bureau reviews of WCI or evidence of a new wine rack company plaintiff asserts was formed in WCI's place establish a prima facie showing that the trial court should have pierced the corporate veil to exercise jurisdiction over defendant.

As this Court stated in *Green*:

[W]hen considering whether to disregard the separate existence of an artificial entity, a court must first examine the totality of the evidence surrounding the owner's use of an artificial entity and, in particular, the manner in which the entity was employed in the matter at issue. From this evidence, the trial court must determine whether the evidence establishes that the owner operated the entity as his or her alter ego—that is, as a sham or mere agent or instrumentality of his or her will. [*Green*, 310 Mich App at 458 (citations omitted).]

Plaintiff's allegation that defendant, as the owner of WCI and knowing that bankruptcy was imminent, devised a scheme to take deposits from customers with no intention of delivering the orders, and the evidence described above, may be sufficient with supporting evidence to demonstrate that he used the company as his alter ego or a mere instrumentality of his own will.

Given these allegations, and defendant's failure to submit evidence in response to the motion, the trial court's grant of summary disposition was premature here, where discovery has not yet commenced, plaintiff presented some evidence in support of its argument to pierce the corporate veil, and defendant failed to produce an affidavit disputing plaintiff's allegations and evidence or putting forth its own evidence. See *Yoost*, 295 Mich App at 221. The evidence plaintiff has produced, while not enough to establish a prima facie showing that the trial court should have pierced the corporate veil, satisfied its summary disposition burden. We recognize that the policy favoring full and open discovery has more limited application in a preliminary challenge to jurisdiction because "[t]he concept of fairness is emasculated where the nonresident is haled to Michigan during the completion of discovery to find out whether the party should be haled to Michigan to defend the suit." *Oberlies*, 246 Mich App at 440 n 2. Here, however, we are convinced that some limited discovery regarding defendant's alleged use of WCI as an alter ego "stands a reasonable chance of uncovering factual support for plaintiff's position." *Electrolines, Inc v Prudential Assurance Co, Ltd*, 260 Mich App 144, 170; 677 NW2d 874 (2003). Accordingly, we vacate the trial court's order and remand for the trial court to allow discovery limited to whether the corporate veil of WCI should be pierced. After this limited discovery, the trial court should

decide whether the veil of WCI should be pierced; if it should not be, the matter should be dismissed for lack of jurisdiction. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Sima G. Patel