# STATE OF MICHIGAN

# COURT OF APPEALS

LEVERT LYONS,

        Plaintiff-Appellee,

v

SCOTT C. KINSEL, JEFFREY D. HUNT, and
MOORE LANDREY, LLP,

        Defendants-Appellants,

and

ETHAN L. SHAW, JOHN P. COWART, SHAW
COWART, LLP, J. THOMAS RHODES III,
FILEMON B. VELA, JR., RHODES & VELA,
GORDON T. CAREY, JR., GORDON T. CAREY,
JR., PC, TARA J. WILLIAMS, and LAW
OFFICES OF JAMES SCOTT FARRIN,

        Defendants.

UNPUBLISHED
April 25, 2017


No. 329584
Wayne Circuit Court
LC No. 15-001381-NM

---

LEVERT LYONS,

        Plaintiff-Appellee,

v

SCOTT C. KINSEL, JEFFREY D. HUNT,
MOORE LANDREY, LLP, ETHAN L. SHAW,
JOHN P. COWART, SHAW COWART, LLP, J.
THOMAS RHODES III, FILEMON B. VELA,
JR., RHODES & VELA, GORDON T. CAREY,
JR., and GORDON T. CAREY, JR., PC,

        Defendants,

and

No. 329597
Wayne Circuit Court
LC No. 15-001381-NM

-1-

TARA J. WILLIAMS and LAW OFFICES OF
JAMES SCOTT FARRIN,

        Defendants-Appellants.

_____

LEVERT LYONS,

        Plaintiff-Appellee,

v                                     No. 329607
                                        Wayne Circuit Court
SCOTT C. KINSEL, JEFFREY D. HUNT,        LC No. 15-001381-NM
MOORE LANDREY, LLP, TARA J. WILLIAMS,
and LAW OFFICES OF JAMES SCOTT
FARRIN,

        Defendants-Appellees,

and

ETHAN L. SHAW, JOHN P. COWART, and
SHAW COWART, LLP,

        Defendants-Appellants,

and

J. THOMAS RHODES III, FILEMON B. VELA,
JR., RHODES & VELA, GORDON T. CAREY,
JR., and GORDON T. CAREY, JR., PC,

        Defendants.

_____

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

       In this consolidated appeal arising out of an attorney malpractice claim, in Docket Nos. 329584 and 329607, defendants Scott C. Kinsel, Jeffrey D. Hunt, John P. Cowart, Ethan L. Shaw, Moore Landrey, LLP, and Shaw Cowart, LLP (Shaw Cowart firm) appeal by leave granted the trial court's order denying their motions for summary disposition pursuant to MCR 2.116(C)(1) for lack of personal jurisdiction. In Docket No. 329597, defendants Tara J. Williams and Law Offices of James Scott Farrin (Farrin firm) appeal by leave granted the same order of the trial court, which also denied these defendants' motion to transfer venue to

-2-

Marquette County.[1]  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.  FACTUAL BACKGROUND

Plaintiff, a Michigan resident, obtained a patent for technology to be used in athletic shoes.  After obtaining the patent, plaintiff discovered what he believed to be athletic shoes that infringed his patent manufactured and sold by Nike, Inc.  Plaintiff searched the Internet for an attorney to handle a patent infringement action, which led plaintiff to the website of the Farrin firm, located in North Carolina.  After plaintiff established contact with Williams, who was the Farrin firm's patent attorney, Williams reached out to Moore Landrey, a Texas law firm, for assistance.  A conference call occurred between Kinsel, for Moore Landrey, Williams, and plaintiff, and after the call, plaintiff agreed to and signed a retainer agreement.  Plaintiff averred that he signed the agreement in Wayne County, and the retainer agreement specifically mentioned that both the Farrin firm and Moore Landrey would be providing legal services.

At the time, Shaw, Cowart, Hunt, and Kinsel were all attorneys employed by Moore Landrey.  Plaintiff contended in his affidavit that Kinsel, after discussing the issue with Williams and Shaw, advised plaintiff that they should file the patent infringement lawsuit in federal district court in Texas, which was more plaintiff-friendly.  Shortly after the litigation with Nike began, Kinsel left the practice of law.  Nike successfully moved the United States District Court for the Eastern District of Texas to transfer the case to Oregon.  Once the case was in Oregon, Nike moved for summary judgment, arguing that its athletic shoes did not infringe plaintiff's patent. In June 2012, the United States District Court for the District of Oregon agreed with Nike and granted its motion.  *Lyons v Nike, Inc*, 874 F Supp 2d 986, 1002 (D Or, 2012).  Plaintiff's attorneys then moved the court to reconsider its decision.  While that motion was pending, Shaw and Cowart left Moore Landrey and formed the Shaw Cowart firm.  The Shaw Cowart firm was formed on January 1, 2013, and plaintiff's motion for reconsideration was denied on January 30, 2013.  See *Lyons v Nike, Inc*, 920 F Supp 2d 1161, 1164 (D Or, 2013).

Before the instant claim was filed, Williams moved to Marquette County, Michigan, while still working for the Farrin firm.  Plaintiff subsequently sued the named defendants in Wayne County, alleging that they were negligent for filing the patent case in Texas instead of Michigan, and for hiring an unqualified expert witness, Duane Priddy.  In their first responsive pleadings, Kinsel, Hunt, and Moore Landrey (the Moore Landrey defendants, collectively), moved for summary disposition pursuant to MCR 2.116(C)(1) for lack of personal jurisdiction. Shaw, Cowart, and the Shaw Cowart firm (the Shaw Cowart defendants, collectively) did the same.  Williams and the Farrin firm (The Farrin firm defendants, collectively) moved the trial

---

[1] *Lyons v Kinsel*, unpublished order of the Court of Appeals, entered April 7, 2016 (Docket Nos. 329584 & 329607); *Lyons v Kinsel*, unpublished order of the Court of Appeals, entered April 7, 2016 (Docket No. 329597).

court to transfer venue to Marquette County. After hearing arguments, the trial court denied all of the motions.[2]

## II. PERSONAL JURISDICTION

The Moore Landrey defendants and the Shaw Cowart defendants (the jurisdiction defendants, collectively) contend that the trial court erred by denying their motions for summary disposition. We agree with regard to defendants Shaw and the Shaw Cowart firm, but disagree with regard to the remaining jurisdiction defendants.

"We review a trial court's decision regarding a motion for summary disposition de novo." *City of Fraser v Almeda Univ*, 314 Mich App 79, 85; 886 NW2d 730 (2016). "When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Yoost v Caspari*, 295 Mich App 209, 221; 813 NW2d 783 (2012). "The legal question of whether a court possesses personal jurisdiction over a party is also reviewed de novo." *Id*. at 219. "We also review de novo whether an exercise of jurisdiction over [defendants] is consistent with the notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *City of Fraser*, 314 Mich App at 86. "The plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition." *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995) (citation omitted).

Personal jurisdiction over an individual or entity may be established in two different ways: general personal jurisdiction or specific (limited) personal jurisdiction. *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 706; 854 NW2d 509 (2014). In the instant case, it is undisputed that general personal jurisdiction does not exist over any of the jurisdiction defendants. Therefore, we must determine whether it was proper to exercise limited personal jurisdiction over the relevant defendants. See *id*. In determining whether a Michigan court can exercise limited personal jurisdiction over out-of-state defendants, this Court must engage in a two-step inquiry. *City of Fraser*, 314 Mich App at 87. " 'First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute.' " *Id*. (citation omitted). " 'Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment.' " *Id*. (citation omitted). " 'Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident.' " *Id*. (citation omitted). This Court has differentiated the application of the long-arm statute from the application of due process as follows: "Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by

---

[2] We note that defendants J. Thomas Rhodes III, Filemon B. Vela, Jr., Rhodes & Vela, Gordon T. Carey, Jr., and Gordon T. Carey, Jr., PC, were dismissed from the case. No party challenges the court's determination regarding these defendants.

defining the quality of contacts necessary to justify personal jurisdiction under the constitution." *Id*. (citation omitted).

## A. LONG-ARM STATUTE

Michigan has separate long-arm statutes for establishing jurisdiction over individuals and partnerships. For individuals, the applicable long-arm statute is MCL 600.705:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
>
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
>
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
>
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

For partnerships, the applicable statute is MCL 600.725:

> The existence of any of the following relationships between a partnership or limited partnership or an agent thereof and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such partnership or limited partnership and to enable such courts to render personal judgments against such partnership or limited partnership arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Accordingly, we must first consider whether the trial court properly determined that Michigan's long-arm statutes reach the jurisdiction defendants. We begin by noting that it is undisputed that MCL 600.705(3), (4), (6), and (7), and MCL 600.725(3) and (4) are inapplicable to the jurisdiction defendants.

We conclude that jurisdiction is authorized under MCL 600.705(1) and MCL 600.725(1) with regard to Kinsel, Hunt, Cowart, and Moore Landrey because these defendants transacted business in Michigan. In order to determine if the jurisdiction defendants transacted any business in Michigan, we must consider their contacts with Michigan. Kinsel was working for the Moore Landrey firm when he was contacted by Williams and the Farrin firm. Williams informed Kinsel that plaintiff was seeking a patent attorney for potential litigation against Nike. Subsequently, Kinsel, Williams, and plaintiff participated in a conference telephone call. During the conference call, Kinsel was in Texas, Williams was in North Carolina, and plaintiff was in Michigan. Plaintiff averred that, during that conference call, Kinsel solicited plaintiff's business by relaying his and the Moore Landrey firm's expertise and success in the field of patent litigation. After that conference call, plaintiff signed a retainer agreement with Williams and the Farrin firm, which specifically noted that the Moore Landrey firm would also be involved in the case.

As the litigation progressed, plaintiff received mail and telephone calls, while he was in Michigan, from Hunt, Kinsel, and Cowart. Hunt, Kinsel, and Cowart also sent documents to plaintiff in Michigan for plaintiff's review. Plaintiff averred that he would review the documents and respond to them. Plaintiff stated that he discussed with Kinsel where the patent litigation should be filed. Plaintiff averred that Kinsel discussed that decision with Shaw. During discovery, Cowart went to Michigan twice to attend depositions. According to plaintiff, Hunt, Cowart, and Kinsel had contact with Stephen Pemult, the Michigan attorney who helped plaintiff obtain the patent, and Priddy, while both men were in Michigan. Priddy was hired as the expert witness while he lived in Michigan. Kinsel left the practice of law shortly after the underlying patent case was filed. Shaw, Cowart, and Hunt averred that they provided all of their legal services while in Oregon or Texas. Summary judgment against plaintiff in the underlying patent case was granted in June 2012. Shaw and Cowart left the Moore Landrey firm in December 2012, started the Shaw Cowart firm in January 2013, and brought plaintiff with them as a client. Plaintiff's reconsideration motion was denied on January 30, 2013.

-6-

The Michigan Supreme Court has considered the expansive nature of the phrase "the transaction of any business." *Sifers v Horen*, 385 Mich 195, 198-199; 188 NW2d 623 (1971). In *Sifers*, the defendant was an attorney who was licensed and lived in Kentucky. *Id*. at 200 (SWAINSON, J., dissenting).[3] The defendant attended and spoke at a three-day seminar on personal injury and negligence law, during which the defendant held himself out to be an expert in the field. *Id*. While the defendant was in Michigan, he was approached by another attorney hired by the plaintiff, who indicated that the plaintiff wanted to file a wrongful death lawsuit in Kentucky. *Id*. at 201. "[U]pon [the] defendant's representations that he was fully qualified and competent to represent [the] plaintiff in the Courts of Kentucky in such action, [the plaintiff] retained [the] defendant for such purpose." *Id*. While the case in Kentucky was pending, the defendant came to Michigan again for a different seminar, and, during that visit, had a meeting with the plaintiff to discuss the case. *Id*. at 201-202. Shortly before trial was to occur in the wrongful death suit, the plaintiff was offered $27,500 to settle. *Id*. at 202. On the advice of the defendant, the plaintiff refused that settlement offer and proceeded to trial. *Id*. After the trial, the verdict found no cause of action, and the plaintiff received no damages. *Id*. The defendant filed an appeal, but allowed the appeal rights to lapse. *Id*. Subsequently, the plaintiff filed an attorney malpractice suit against the defendant in Michigan. *Id*. The defendant moved the trial court to dismiss the case for lack of personal jurisdiction. *Id*. at 203. The trial court denied the defendant's motion, determining that Michigan's long-arm statute reached the defendant pursuant to MCL 600.705(2). *Id*. The defendant appealed that decision to this Court. *Id*. This Court affirmed the decision of the trial court, but found that MCL 600.705(1) was applicable because the defendant had transacted business in Michigan. *Id*.

The case was then appealed to the Michigan Supreme Court in order to construe MCL 600.705(1). *Sifers*, 385 Mich at 198 (opinion of the Court). The Court held that "[t]he phrase 'transaction of any business' is construed as broader than 'doing business.' " *Id*. at 199. The Court noted, "It can scarcely be doubted that the negotiations in Michigan resulting in [the] defendant's retainer come within the concept of the transaction of 'any' business." *Id*. The Court reasoned that "[t]he word 'any' means just what it says. It includes 'each' and 'every' . . . [and] comprehends 'the slightest.' " *Id*. at 199 n 2.

In light of the *Sifers* case, we find that Michigan's long-arm statutes reach Cowart, Hunt, Kinsel, and the Moore Landrey firm for their allegedly negligent representation of plaintiff. The *Sifers* Court held that the transaction of any business in Michigan "includes 'each' and 'every' . . . [and] comprehends 'the slightest.' " *Sifers*, 385 Mich at 199 n 2. Although the instigation of a legal relationship with a Michigan resident did not stem from defendants' presence in Michigan, as occurred in *Sifers*, their privileged conversations with plaintiff while plaintiff was in Michigan, hiring and presumably paying for the services of an expert witness in Michigan, and going to Michigan to meet with two witnesses and defend their depositions constitutes "the transaction of any business" in Michigan. Therefore, both MCL 600.705(1) and MCL 600.725(1) are applicable in the instant case.

---

[3] We note that the majority opinion did not discuss the facts of the case in detail.

However, MCL 600.705 and MCL 600.725 do not apply to Shaw or the Shaw Cowart firm. With regard to the Shaw Cowart firm, the firm was formed well after all of the alleged contacts occurred. Indeed, the Shaw Cowart firm was formed only 30 days before the motion for reconsideration was denied. Further, there is no evidence on the record that Cowart performed any of the legal work that amounted to his contacts with Michigan while he represented plaintiff with the Shaw Cowart firm. Therefore, because there was no transaction of business in Michigan by the Shaw Cowart firm, and no other indication that the firm had contact with Michigan, the trial court improperly determined that Michigan's long-arm statute for partnerships, MCL 600.725, reached the Shaw Cowart firm. Similarly, although there is evidence that Shaw participated in the patent litigation, there is no indication that Shaw had any contact with Michigan during the case. While plaintiff stated in his affidavit that Kinsel discussed the patent litigation venue issue with Shaw, plaintiff specifically excludes Shaw as one of the attorneys who made contact with plaintiff and the relevant witnesses in Michigan. There is no other indication that Shaw had any contact with Michigan. Therefore, the trial court improperly determined that the long-arm statute for individuals applies to Shaw. See MCL 600.705; *Sifers*, 385 Mich at 198-200.

## B. DUE PROCESS

For the remaining jurisdiction defendants, we next consider whether the exercise of limited personal jurisdiction comports with the requirements of due process.

When conducting a due-process analysis, "a court should examine the defendant's own conduct and connection with the forum to determine whether the defendant should reasonably anticipate being haled into court there." *W H Froh, Inc v Domanski*, 252 Mich App 220, 230; 651 NW2d 470 (2002). A due-process analysis is done on a case-by-case basis. *Id*. The primary question to be answered, according to the United States Supreme Court, is "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp v Rudzewicz*, 471 US 462, 476; 105 S Ct 2174; 85 L Ed 2d 528 (1985), quoting *Int'l Shoe Co v Washington*, 326 US 310, 320; 66 S Ct 154; 90 L Ed 95 (1945). Thus, in order for a court to have limited personal jurisdiction over a defendant, the defendant must possess minimum contacts with the state. See *Jeffrey*, 448 Mich at 185. In *Yoost*, 295 Mich App at 223, this Court stated that the due-process analysis requires the application of a three-part test:

> "First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable." [Citation omitted.]

"With respect to the first prong of the due process analysis, a defendant may submit himself to the jurisdiction of another state by reaching beyond his own state and purposefully availing himself of the privilege of exploiting the other state's business opportunities." *W H Froh*, 252 Mich App at 230-231. " 'Purposeful availment' means something akin to either a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct that properly can be regarded as a prime generating cause of resulting effects in Michigan." *Id*. at

-8-

231. This standard requires something more than passive availment of opportunities in Michigan. *Id*. However, it does not require physical presence in the state. *Id*. The United States Supreme Court has held that a contract with an out-of-state party, by itself, cannot establish minimum contacts. *Burger King*, 471 US at 478. Therefore, the existence of the retainer agreement is not enough, on its own, to satisfy due process. *Id*.

The United States District Court for the Eastern District of Michigan recently considered a factually similar case that analyzed, in light of the *Burger King* decision, what else was required besides a contract to establish sufficient minimum contacts. *King v Ridenour*, 749 F Supp 2d 648 (ED Mich, 2010). We find this case to be instructive.[4] In *King*, a Michigan woman died due to secondhand exposure to asbestos leading to mesothelioma. *Id*. at 649. Her son, Wallace, who also lived in Michigan, was appointed as personal representative of her estate and sought to bring a wrongful death action on behalf of her estate. *Id*. Wallace signed a retainer agreement with a Dallas, Texas law firm in order to file a lawsuit on behalf of the estate. *Id*. Shortly thereafter, an addendum was added to that retainer agreement noting that the Dallas firm would be working with the defendant, another out-of-state firm. *Id*. Subsequently, the defendant "filed a lawsuit in a Texas state court against many asbestos-related defendants on behalf of Wallace individually and in his capacity as personal representative" of the estate. *Id*. Wallace was required to distribute any asbestos-related settlements equally between his siblings. *Id*. at 650. For some of the settlements, however, Wallace kept all of the money for himself. *Id*. "The siblings who received no proceeds from the later settlement phases sued [the defendant], Wallace, and Wallace's alleged boyfriend in . . . Michigan." *Id*. The defendant moved the court to dismiss the claims against it for lack of personal jurisdiction. *Id*. at 651.

After determining that it could not exercise general personal jurisdiction over the defendant, the court considered whether limited personal jurisdiction was proper. *King*, 749 F Supp 2d at 653-654. The court noted that the "[p]laintiffs focus solely on their alleged attorney-client relationship and retainer contract with [the defendant] in the estate's wrongful death action" to establish sufficient minimum contacts with Michigan. *Id*. at 654. The defendant argued that "such contacts with Michigan are not sufficient bases for concluding that [the defendant] purposefully availed itself of Michigan's laws." *Id*. at 655. The court stated that "the mere fact that a non-resident defendant enters into a contract with a forum resident is not, by itself, a sufficient basis for finding purposeful availment." *Id*. at 656. The court then extended that reasoning, stating that "[e]ven simple correspondence and telephone calls to the forum that facilitate formation and performance of the contract are not enough." *Id*. In granting the defendant's motion to dismiss and finding that the court lacked personal jurisdiction, the court relied heavily on three facts: (1) the defendant did not actively seek the plaintiffs' business, (2) the case was referred to the defendant by a different out-of-state firm, and (3) the defendant's only contact with the state was the retainer agreement and "the facilitative correspondence" associated therewith. *Id*. at 657. In sum, the court held that the defendant "has not purposefully availed itself of the benefits and protections of Michigan's laws. The absence of purposeful

---

[4] "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

availment is fatal to the Court's exercise of [limited] personal jurisdiction over" the defendant. *Id*.

In the instant case, the jurisdiction defendants rely heavily on the *King* decision. According to the jurisdiction defendants, the relevant facts relied on by the *King* court translate directly to the present case. They argue that this Court should reverse the trial court's decision based on the same reasoning provided by the *King* decision. To do so, however, would be to ignore relevant factual distinctions between the two cases. While it is true that the only evidence of contact with Michigan by the defendant in *King* was the retainer agreement and facilitative correspondence, the same is not true for the present case. In *King* there was no evidence that there was a solicitation from the defendant to the plaintiffs. Meanwhile, in the present case, plaintiff averred that he had not decided to sign the retainer agreement with the Farrin firm and the Moore Landrey firm until he participated in a conference call with Williams and Kinsel. Plaintiff averred that, during that conference call, Kinsel solicited plaintiff's business by discussing the Moore Landrey firm's expertise in the field of patent litigation. There is no evidence of similar contact in *King*. Instead, the court in *King* noted that the fact that the plaintiffs and the defendant found each other was due to the activity of the attorney with the Dallas firm, and was not caused by any efforts of the defendant directed toward Michigan. *King*, 749 F Supp 2d at 657. In contrast, the Moore Landrey firm in the present case was not simply a passive recipient of a referral from Williams and the Farrin firm. Rather, Kinsel, on behalf of the Moore Landrey firm, actively participated in the solicitation of plaintiff's business, presumably knowing that plaintiff was a Michigan resident.

The *King* case can be further distinguished by the fact that the jurisdiction defendants had more than just "facilitative correspondence" with plaintiff and Michigan. The record reveals that Cowart, on behalf of the Moore Landrey firm, physically came to Michigan to perform two depositions during discovery for the instant case. Further, the jurisdiction defendants hired an expert witness, Priddy, who lived in Michigan. Lastly, the jurisdiction defendants had to make telephone contact with Michigan in more ways than just correspondence with plaintiff because relevant witnesses lived in Michigan, including the patent attorney who originally obtained the patent for plaintiff, and Priddy, the expert witness. Considering that these contacts with Michigan go above and beyond those discussed in *King*, we agree with the trial court that Cowart, Hunt, Kinsel, and Moore Landrey purposefully availed themselves of doing business in Michigan. In summary, by directly soliciting plaintiff's business over the telephone, going to Michigan for two depositions, hiring an expert witness who lived in Michigan, and contacting witnesses who lived in Michigan, these jurisdiction defendants reached beyond their own state and purposefully availed themselves of the benefits and privileges of Michigan law. See *W H Froh*, 252 Mich App at 230-231.

While purposeful availment is the "constitutional touchstone" of limited personal jurisdiction, for due process to be satisfied the other two parts of the test must be fulfilled. The second part of the test requires that the cause of action in the instant case arose out of the jurisdiction defendants' activities in Michigan. See *City of Fraser*, 314 Mich App at 88. The present case includes an allegation by plaintiff that the defendants committed malpractice by filing the lawsuit in Texas, rather than Michigan, and by hiring an unqualified expert witness. This case arises out of the activities in Michigan because the retainer agreement on which the attorney-client relationship was formed was executed only after Kinsel, on behalf of the Moore

Landrey firm, solicited plaintiff's business while he was in Michigan. Further, plaintiff contends that the jurisdiction defendants hired an unqualified expert. Meanwhile, one of the jurisdiction defendants' contacts with Michigan that amounted to purposeful availment was the hiring of Priddy, who lived in Michigan. During the correspondence with plaintiff in Michigan, the jurisdiction defendants discussed where to file the patent litigation. While plaintiff pushed for Michigan, Kinsel recommended filing in Texas. Those conversations occurred while plaintiff was in Michigan. Given these contacts that led to the alleged malpractice, the second part of the due-process test is fulfilled because the attorney malpractice suit arose out of the jurisdiction defendants' contacts with Michigan.

The third and final part of the due-process test requires consideration of whether the jurisdiction defendants are so substantially connected with Michigan to make the exercise of jurisdiction over the jurisdiction defendants reasonable. See *Yoost*, 295 Mich App at 223. Given the contacts with the state, we hold the trial court's decision to hale the jurisdiction defendants into court was reasonable. Not only was there active solicitation of plaintiff's business while the jurisdiction defendants knew that plaintiff was in Michigan, but the jurisdiction defendants also hired a Michigan expert, communicated with Michigan witnesses who were related to the underlying patent litigation, and in the case of Cowart came to Michigan for depositions. The jurisdiction defendants were well aware of the various ways in which the legal representation related to Michigan. Given that awareness, and the various voluntary steps the jurisdiction defendants took to make contacts with Michigan, they could have reasonably foreseen that they would be brought into court here. *Id*. Therefore, the exercise of personal jurisdiction over Cowart, Hunt, Kinsel, and the Moore Landrey firm comports with the requirements of due process. In sum, the trial court properly determined that there was limited personal jurisdiction over Cowart, Hunt, Kinsel, and the Moore Landrey firm. The trial court erred, however, in determining that there was limited personal jurisdiction over Shaw and the Shaw Cowart firm.

### III. VENUE

The Farrin firm defendants argue that venue was only proper in Marquette County and that the trial court clearly erred by not ordering that venue be changed. We disagree.

In Michigan, the issue of venue is controlled by the relevant statutes, and to the extent that the issue involves statutory interpretation, our review of the issue is de novo. *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 624; 752 NW2d 37 (2008). However, "[a]n appellate court uses the clearly erroneous standard to review a trial court's ruling on a motion to change venue." *Brightwell v Fifth Third Bank of Mich*, 487 Mich 151, 156; 790 NW2d 591 (2010). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Dimmitt & Owens Fin*, 481 Mich at 624.

"Venue is determined at the time the suit is filed and is not normally defeated by subsequent events." *Shiroka v Farm Bureau Gen Ins Co of Mich*, 276 Mich App 98, 104; 740 NW2d 316 (2007). "In Michigan, plaintiffs carry the burden of establishing the propriety of their venue choice." *Karpinski v Saint John Hosp – Macomb Ctr Corp*, 238 Mich App 539, 547; 606 NW2d 45 (1999).

The venue statute for torts, MCL 600.1629(1), provides a hierarchy of proper venue locations. In pertinent part, MCL 600.1629(1) states:

> Subject to subsection (2), in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, all of the following apply:
>
> (a) The county in which the original injury occurred and in which either of the following applies is a county in which to file and try the action:
>
> (*i*) The defendant resides, has a place of business, or conducts business in that county.
>
> (*ii*) The corporate registered office of a defendant is located in that county.
>
> (b) If a county does not satisfy the criteria under subdivision (a), the county in which the original injury occurred and in which either of the following applies is a county in which to file and try the action:
>
> (*i*) The plaintiff resides, has a place of business, or conducts business in that county.
>
> (*ii*) The corporate registered office of a plaintiff is located in that county.
>
> (c) If a county does not satisfy the criteria under subdivision (a) or (b), a county in which both of the following apply is a county in which to file and try the action:
>
> (*i*) The plaintiff resides, has a place of business, or conducts business in that county, or has its corporate registered office located in that county.
>
> (*ii*) The defendant resides, has a place of business, or conducts business in that county, or has its corporate registered office located in that county.
>
> (d) If a county does not satisfy the criteria under subdivision (a), (b), or (c), a county that satisfies the criteria under section 1621 or 1627 is a county in which to file and try an action.

Considering the language of the statute, the first two options for proper venue are established by MCL 600.1629(1)(a) or (1)(b). For either MCL 600.1629(1)(a) or (1)(b) to establish venue, the county must be the county "in which the original injury occurred."

The Michigan Supreme Court has held that, in legal malpractice cases, the "original injury" is not where "the negligent omissions of the defendant occurred" but rather, "the county in which the original injury suffered by the plaintiff occurred." *Dimmitt & Owens Fin*, 481 Mich at 628. Thus, the court must examine "the first injury *resulting from* an act or omission of a defendant," rather than "the original breach of the standard of care." *Id*. at 630.

In the present case, which is an attorney malpractice case, the underlying patent litigation was dismissed in the United States District Court for the District of Oregon. While the Farrin firm defendants may have allegedly made "negligent omissions" by filing in the wrong state or hiring an expert witness in Michigan, the actual injury occurred, according to *Dimmitt & Owens Fin*, in Oregon because that is where the underlying case was dismissed. As such, because the "original injury" did not occur in Wayne County, venue could not possibly have been established by either MCL 600.1629(1)(a) or (1)(b). See *Dimmitt & Owens Fin*, 481 Mich at 628.

According to the statute, the next subsection to consider for establishing venue is MCL 600.1629(1)(c). In the instant case, the facts clearly show defendants do not reside, have a place of business, conduct regular business, or have a corporate registered office in Wayne County. Because the parties clearly do not share residency, business, or a registered office in Wayne County, MCL 600.1629(1)(c) cannot establish venue. Subsequently, this Court must look to MCL 600.1629(1)(d) for guidance. That subsection directs this Court to examine MCL 600.1621 and MCL 600.1627. MCL 600.1629(d), however, does not provide guidance on which statute should be considered first. Therefore, if venue is proper pursuant to one of the statutes, the trial court did not commit error.

MCL 600.1627 provides that venue is proper in "the county in which all or part of the cause of action arose[.]" A cause of action for attorney malpractice requires proof of four separate elements: "(1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and the extent of the injury alleged." *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006). In *Coleman v Gurwin*, 443 Mich 59, 65-66; 503 NW2d 435 (1993), our Supreme Court expanded upon the meaning of "all or a part of the cause of action" in the context of a legal malpractice claim.[5] In *Coleman*, the plaintiff was discharged from her employment with Detroit Public Schools, and she consulted with the defendant attorney with regard to a potential wrongful discharge claim against the school district. *Id*. at 61. However, after meeting with the plaintiff, the defendant informed the plaintiff in a letter that he would not represent her because he did not believe that her claim had merit. *Id*. The plaintiff then filed a lawsuit against the defendant, alleging legal malpractice. *Id*. The plaintiff claimed that the defendant gave her improper advice in the letter regarding the applicable statute of limitations, which caused her to delay her wrongful discharge action until after the limitations period had expired. *Id*. The defendant moved for a change of venue, arguing that Wayne County was the wrong venue because the alleged malpractice only occurred in Oakland and Washtenaw Counties. *Id*. The plaintiff contended that Wayne County was the proper venue because she would have filed the wrongful discharge action in that county. *Id*. at 64-65. Our Supreme Court concluded that "[a] legal malpractice action and the litigation or representation from which it arose, of course, are distinct." *Id*. at 66. The Court explained that venue in a legal malpractice case is determined by

---

[5] *Coleman* addresses MCL 600.1629, which was amended by 1995 PA 161 and 1995 PA 249, effective March 28, 1996. *Coleman* analyzes the preamendment version of the statute, the language of which was consistent with the portion of MCL 600.1627 at issue here.

where the alleged legal negligence occurred. *Id*. Importantly, the Court stated that venue was not proper in Wayne County because

> [n]ot one of the parts of the cause of action for legal malpractice occurred in Wayne County; *the plaintiff retained the attorney in Oakland County*, the advice was given in Oakland County and received in Washtenaw County, and the statute of limitations ran while the plaintiff lived in Washtenaw County. [*Id*. at 66-67 (emphasis added).]

The Court's indication that the plaintiff retained the attorney in Oakland County illustrates that a part of a cause of a legal malpractice action occurs in the county where the attorney-client relationship is formed. See *id*.

In this case, plaintiff averred that, after his business was solicited, he signed the retainer agreement while in Wayne County. When plaintiff signed that document, the attorney-client relationship commenced. Because the existence of an attorney-client relationship is an element for an attorney malpractice cause of action, at least "a part of the cause of action arose" in Wayne County. Accordingly, venue was proper in Wayne County, and the trial court did not clearly err by denying the Farrin firm defendants' motion to change venue to Marquette County. See *Coleman*, 443 Mich at 66-67.

We affirm the trial court's order with regard to its exercise of limited personal jurisdiction over Cowart, Kinsel, Hunt, and the Moore Landrey firm, and with regard to the denial of the Farrin firm defendants' motion to change venue, we reverse the trial court's order with regard to its exercise of personal jurisdiction over Shaw and the Shaw Cowart firm, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael F. Gadola